863 F.2d 47
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BORMAN'S, INC., a Delaware corporation, Plaintiff-Appellant,
Cross-Appellee,
v.
UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION,
LOCAL 876, AFL-CIO, Defendant-Appellee, Cross-Appellant.
 Nos. 87-1909, 87-1948.
 United States Court of Appeals, Sixth Circuit.
 Nov. 21, 1988.
 
 Before BOYCE F. MARTIN Jr. and DAVID A. NELSON, Circuit Judges and CONTIE, Senior Circuit Judge.
 Cross-appellant's petition for rehearing is GRANTED, and this court's opinion filed on October 7, 1988, is hereby VACATED.
 PER CURIAM.
 
 
 1
 Borman's, Inc. appeals from the district court's August 27, 1987 order and judgment, granting United Food and Commercial Workers International Union, Local 876, AFL-CIO (the union)'s motion for summary judgment in this action to vacate an arbitration award. The union cross-appeals from that part of the district court's order denying its motion for sanctions pursuant to Federal Rule of Civil Procedure 11. For the following reasons, we affirm the district court's judgment in all respects.
 
 
 2
 The underlying arbitration award in this case arose from an incident at a Farmer Jack supermarket owned by Borman's located on Rosa Parks Boulevard in Detroit, Michigan on July 12, 1986. On that date, which was one of the busiest Saturdays of the month, the Farmer Jack was leanly-staffed because three cashiers had called in sick, and three other cashiers scheduled to begin work before 12:30 p.m. had reported late. As a result, the cashiers working that day were required to postpone their scheduled breaks. At approximately 12:15 p.m., when each checkout line had eight to ten customers and a total of 200 to 250 customers were in the store, the cashiers engaged in a wildcat strike by putting their cash registers in the lock position and refusing to ring groceries.
 
 
 3
 At the time the wildcat strike began, Ronald Hoffman, the store manager, requested that the cashiers pick up the intrastore telephones. After he heard them pick up the telephones, he asked if Marjorie Davenport, the union steward, was on the line and asked her about the situation. Davenport replied that the cashiers were tired of late breaks, late lunches and overtime, and she refused to ring any more groceries. The manager warned Davenport over the phone that she could be discharged for her actions, and Davenport responded that she did not care.
 
 
 4
 The manager next consulted with his supervisors at another location, then approached Davenport at her station, cash register seven, with a second warning. The manager retreated to the front office, then returned to Davenport's station with his third warning. When Davenport refused to return to work for the third time, she was fired. While the security guard escorted Davenport out of the store, the manager announced over the public address system that she had been discharged.
 
 
 5
 After discharging Davenport, the manager approached Robert Smoak at cash register six. The parties dispute whether Smoak had returned to work after Davenport's discharge. In any event, Smoak was discharged and replaced by another worker. No announcement was made concerning Smoak's discharge.
 
 
 6
 On July 14, 1986, Davenport and Smoak filed grievances pursuant to their collective bargaining agreement, requesting reinstatement and back pay. The grievances proceeded to arbitration. On June 1, 1987, the arbitrator issued an opinion and award which found that Borman's had violated the terms of Article 25, Paragraph F, and Article 5, Paragraph C, of the collective bargaining agreement when it discharged Davenport and Smoak. The arbitrator awarded reinstatement with back pay and benefits as requested.
 
 
 7
 Thereafter, on June 17, 1987, Borman's filed a complaint to vacate the arbitration award. The union filed an answer and a counterclaim for enforcement of the arbitration award. The union also requested costs and attorney's fees at that time, but the union did not request sanctions, nor did it rely on Federal Rule of Civil Procedure 11. The parties filed cross-motions for summary judgment. In its brief in support of its motion for summary judgment, the union requested attorney's fees pursuant to Rule 11.
 
 
 8
 At a hearing held on August 24, 1987, counsel for the union began to discuss Rule 11 as follows: "Rule 11 requires that there be a basis, either in fact or law, for bringing this suit to Federal Court and the courts have been increasingly less--" The court interrupted, "Even if you win, counsel, you are not asking sanctions for bringing a frivolous Motion, are you?" The original transcript indicates that counsel for the union responded, "No, we are not." The parties have stipulated, however, that she responded, "Yes, we are." At the conclusion of the hearing, the district court ruled on the cross-motions for summary judgment from the bench.
 
 
 9
 At that time, the court granted the union's motion for summary judgment. In an order filed August 27, 1987, consistent with its earlier bench opinion, the district court granted the union's motion for summary judgment, denied Borman's motion for summary judgment, and denied the union's motion for sanctions. On that same date, a separate judgment was entered, which granted the union's motion for summary judgment and dismissed Borman's complaint.
 
 
 10
 On September 16, 1987, Borman's filed a notice of appeal from the district court's order granting the union's motion for summary judgment and denying Borman's motion for summary judgment. Thereafter, on September 25, 1987, the union filed a cross-appeal from that part of the order denying the union's motion for sanctions. This court must decide whether the arbitral decision draws its essence from the collective bargaining agreement and, therefore, must be enforced. Additionally, we must decide whether the district court abused its discretion in denying the union's motion for sanctions.
 
 II.
 A.
 
 11
 Under well-established standards for the review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one. When the parties include an arbitration clause in their collective-bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not 'dra[w] its essence from the collective bargaining agreement,' a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision may be ambiguous.
 
 
 12
 W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers, 461 U.S. 757, 764 (1983) (citations omitted). On the other hand,
 
 
 13
 an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.
 
 
 14
 United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). See also United Paperworkers Int'l Union v. Misco, Inc., 108 S.Ct. 364 (1987).
 
 
 15
 Borman's argues that the arbitrator's award of reinstatement of Davenport is contrary to the collective bargaining agreement and that the arbitrator could not substitute his judgment for the company's decision to discharge Davenport for insubordination. Borman's also argues that the arbitrator's reinstatement of Smoak is inconsistent with his decision to reinstate Davenport. We reject these arguments in turn.
 
 
 16
 Article 25, Paragraph F of the collective bargaining agreement at issue in this case provides that the employer shall not discriminate against any employee for union activity. Additionally, Article 5, Paragraph C provides as follows:
 
 
 17
 The arbitrator shall have the authority and jurisdiction to determine the propriety of the interpretation and/or application of the Agreement respecting the grievance in question, but shall not have the power to alter or modify the terms of the Agreement. With respect to arbitration involving discharge or discipline of employees, the arbitrator shall determine if the discharge or discipline was for just cause; and he shall review the penalty imposed and if he shall determine the Employer's action to be improper, inappropriate and/or unduly severe, he may vacate it or modify it accordingly.
 
 
 18
 He shall have the authority and jurisdiction in cases concerning discharge, discipline, or other matters, if he shall so determine, to order the payment of back wages and compensation for an employee which the employee would otherwise have received and/or enter such other and/or further award as may be appropriate and just.
 
 
 19
 In his opinion and award, the arbitrator stated that the employees' actions in participating in the wildcat strike constituted a serious breach of the employment relationship for which discharge is an appropriate remedy. The arbitrator continued that Borman's and the union had agreed that an employer may discharge some of the participants who have engaged in an unlawful work stoppage and not discharge others as long as the employer does not select the employees to be discharged based upon "bad faith, unfairness, capriciousness or improper motive...." See also Metropolitan Edison Co. v. NLRB, 460 U.S. 698 (1983).
 
 
 20
 With respect to Davenport, the arbitrator found that she was not the instigator of the wildcat strike. Nonetheless, the arbitrator specifically found that the manager's initially requesting to speak with Davenport on the telephone was entirely understandable and consistent with the collective bargaining agreement. However, the arbitrator found that the manager selected Davenport as his first cashier to direct to return to work or else be discharged solely because she was the union steward, and that the manager's actions, therefore, violated the provisions of Article 25, Paragraph F of the collective bargaining agreement.
 
 
 21
 With respect to Smoak, the arbitrator found as follows:
 
 
 22
 I am satisfied that Mr. Smoak was ringing groceries, maybe intermittently, and had abandoned his work stoppage.
 
 
 23
 The Manager testified that if employees started to work they would not have been discharged. Mr. Smoak was working at the time of his discharge. He should not have been discharged pursuant to the criteria of the Manager. I am also satisfied that other cashiers who were not working were bypassed by the manager when he approached Mr. Smoak. As a result, Employer's treatment of Mr. Smoak as distinguished from other workers engaged in the work stoppage was arbitrary and capricious and violated the standard of fairness to which Mr. Smoak was entitled. I find that employer is required to reinstate him to his former position.
 
 
 24
 The arbitrator elaborated on the contractual authority for his position as follows: "The actions of Employer relative to Mr. Smoak were inappropriate and unduly severe pursuant to Article 5, Paragraph C, of the Agreement under the circumstances occurring at the time of his discharge."
 
 
 25
 Thus, the arbitral decision appears to draw its essence from the collective bargaining agreement. The collective bargaining agreement plainly prohibits discrimination against an employee for union activity, mandates the arbitrator to determine if discharge was for just cause, and further mandates that "he shall review the penalty imposed and if he shall determine the Employer's action to be improper, inappropriate and/or unduly severe, he may vacate it or modify it accordingly."
 
 
 26
 Borman's argues, however, that the arbitrator cannot substitute his judgment for the company's decision to discharge Davenport. We find the cases cited by Borman's to be distinguishable. Therefore, we reject this argument.
 
 
 27
 Borman's relies on Local 342, UAW v. T.R.W., Inc., 402 F.2d 727 (6th Cir.1968), in support of its argument that the arbitrator cannot substitute his judgment for the company's decision to discharge Davenport for insubordination. In that case, this court reversed a district court's judgment enforcing an arbitrator's award which directed reinstatement of seven of the appellant's employees who had been discharged for striking in violation of a collective bargaining agreement. This court reasoned as follows:
 
 
 28
 We consider that the company's contract with the union, of which all of the individuals were members, gave it a clear right to do what it did. The language of this contract was not ambiguous, nor did any of its terms require interpretation by the arbitrator or the courts.
 
 
 29
 Neither before the arbitrator nor the District Judge, nor in their addresses to this Court, did appellees contend that the appellant company did anything that was not its clear right under the contract....
 
 
 30
 * * *
 
 
 31
 * * *
 
 
 32
 Under these circumstances, the company had the right:
 
 
 33
 a) To take disciplinary action--including discharge--against any employee who participated in the described conduct, and
 
 
 34
 b) such action could be taken against all or against only selected participants.
 
 
 35
 Nothing in the contract made the exercise of these rights subject to ultimate approval of an arbitrator or a court: neither was there a requirement of any preliminaries--prior notice or bilateral investigation.
 
 
 36
 * * *
 
 
 37
 * * *
 
 
 38
 The conduct of the arbitrator, thus approved by the District Judge, in reality constituted the addition of terms to a negotiated contract that was neither unclear nor incomplete. The arbitrator held that the company's way of exercising its contractual rights was lacking in fundamental fairness.
 
 
 39
 * * *
 
 
 40
 * * *
 
 
 41
 It was not for an arbitrator to add to the contract a provision that the above right to discharge would be lost unless the company had, in the turmoil and crisis of a strike, announced the reasons for the selectivity employed in exercising its rights and later had established that such reasons were, in the view of an arbitrator, sufficient to permit it to exercise the selectivity which was also an unqualified contractual right.
 
 
 42
 Id. at 729-30.
 
 
 43
 The instant case is distinguishable from T.R.W. since in the instant case the arbitrator found limits on the employer's ability to discharge employees in Article 5, Paragraph C of the collective bargaining agreement which provides that the arbitrator shall determine if a discharge was for just cause, and that if he determines the employer's action to be improper, inappropriate and/or unduly severe, he may vacate it or modify it accordingly. Thus, unlike the contract in T.R.W., the contract in the instant case provides wide latitude for the arbitrator to review discharge decisions. Additionally, the arbitrator in the instant case noted in his opinion that
 
 
 44
 [both the union and the employer] agree that an employer may discharge some of the participants who have engaged in an unlawful work stoppage and not discharge others as long as the employer does not select the employees to be discharged based upon 'bad faith, unfairness, capriciousness or improper motive....' Employer's brief at 58. See also Union's brief at 25-27. Each cite several arbitrator cases in this regard. I concur with the parties' statements of the applicable principles in this regard.
 
 
 45
 (Emphasis added). Finally, Article 25, Paragraph F of the contract expressly prohibits the employer from discriminating against any employee for reasons of union activity.
 
 
 46
 Borman's also relies on Amanda Bent Bolt Co. v. UAW Local 1549, 451 F.2d 1277 (6th Cir.1971). In that case, this court reversed a district court's judgment enforcing an arbitrator's award directing reinstatement with full seniority of twenty-eight employees who had been discharged for striking in violation of a collective bargaining agreement. The arbitrator had held that all twenty-eight discharged employees were entitled to reinstatement with full seniority despite the following findings:
 
 
 47
 The arbitrator finds that the twenty-eight individual grievants who were among those who engaged and participated in a work stoppage on August 13, 1969, were in clear violation of the language of Article VI which prohibits strikes or work stoppages and authorizes the company to take appropriate disciplinary action by reason of such contract violations, including the application of discharge penalties.
 
 
 48
 * * *
 
 
 49
 * * *
 
 
 50
 Inasmuch as the parties have seen fit to empower the Company to discharge employees who engage in a wildcat strike or work stoppage, the arbitrator is precluded and in fact is expressly prohibited, from substituting his judgment for that of the parties.... [T]his arbitrator is bound by the provisions of the contract; he is prohibited from adding to, subtracting from or modifying any of its terms.
 
 
 51
 Id. at 1279. The arbitrator in that case based his award on the fact that on August 29, 1969, the employer sent a letter to all employees involved in the strike, confirming their discharge and stating that the company would consider applications for reemployment as new employees, with the loss of all seniority. The arbitrator reasoned as follows:
 
 
 52
 [N]otwithstanding the grievants' violation of the contract in engaging in a work stoppage, and the fact that the company was authorized to consider the penalty of discharge, such action was not, in fact, taken; the notice of discharge coupled by the proposal to re-employ the grievants as new hirees was a punitive measure at variance with the contract provisions and the established disciplinary concepts.
 
 
 53
 * * *
 
 
 54
 * * *
 
 
 55
 [T]he arbitrator is frank to acknowledge that he regards the indiscriminate application of the discharge penalty to all employees who engaged and participated in work stoppage without consideration of other factors including the degree of their participation is unusually harsh and severe.
 
 
 56
 Id. at 1280. This court held that the award of the arbitrator was contrary to the terms of the collective bargaining agreement and was beyond the scope of his authority.
 
 
 57
 The instant case is easily distinguishable from Amanda Bent Bolt Co. since the collective bargaining agreement in the instant case expressly stated that the arbitrator "shall determine if the discharge was for just cause; and he shall review the penalty imposed and if he shall determine the Employer's action to be improper, inappropriate and/or unduly severe, he may vacate it or modify it accordingly." Thus, unlike Amanda Bent Bolt Co., where the determination of the penalty was reserved to the company and was not the prerogative of the arbitrator, Amanda Bent Bolt Co., 451 F.2d at 1280, the arbitrator in the instant case had wide latitude to review the penalty imposed by the employer.
 
 
 58
 A third case cited by Borman's, International Bhd. of Firemen & Oilers, Local 935-B v. Nestle Co., 630 F.2d 474 (6th Cir.1980), is similar to Amanda Bent Bolt Co. In that case, the collective bargaining agreement vested the right to hire and discharge employees exclusively with management, and further provided that insubordination shall constitute grounds for discharge. In that case, as in Amanda Bent Bolt Co., the arbitrator had no latitude to review the discharge after insubordination had been found. Because in the instant case the arbitrator acted within the scope of the authority granted him by the collective bargaining agreement, we reject Borman's argument that the arbitrator improperly substituted his judgment for the company's decision to discharge Davenport for insubordination.
 
 
 59
 Finally, we reject the argument advanced by Borman's that the arbitrator's decision to reinstate Smoak is inconsistent with his decision to reinstate Davenport. It is entirely reasonable for the arbitrator to find that one employee was discharged for one impermissible reason--union activity, and that another employee's discharge was arbitrary and capricious.
 
 B.
 
 60
 Federal Rule of Civil Procedure 11, as amended effective August 1, 1983, provides in relevant part as follows:
 
 
 61
 Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of an attorney ... constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 
 
 62
 For the union to prevail on its cross-appeal, it must show that the district court abused its discretion in finding that Borman's conduct was reasonable under the circumstances. See Century Products, Inc. v. Sutter, 837 F.2d 247, 250 (6th Cir.1988). "Although the reasonableness test presents a mixed question of law and fact, a district court's decision regarding Rule 11 sanctions is reviewed under an abuse of discretion standard because 'of the district court's more intimate knowledge of the facts of these cases.' " Mihalik v. Pro Arts, Inc., 851 F.2d 790, 793 (6th Cir.1988) (quoting Century Products, Inc., 837 F.2d at 253).
 
 
 63
 In the instant case, at the August 24, 1987 hearing the district court noted that all of the briefs filed in this matter were timely and well done. Although the district court found certain of Borman's arguments to be "without merit" and in its "considered judgment" held in favor of the union, there is no indication in the record that this litigation was frivolous. Under these circumstances, the district court's decision regarding Rule 11 sanctions does not manifest an abuse of discretion.
 
 
 64
 For the foregoing reasons, the district court's judgment is AFFIRMED.