**Richard P. MIHALIK, Don Doughty, and Paul W. Useloff, Plaintiffs–Appellees,**

**Peter A. Cantwell, Steven F. Boulton, and Leonard B. Scharfeld, Attorneys–Appellees,**

v.

**PRO ARTS, INC., et al., Defendants,**

**Ted Trikilis, Defendant–Appellant.**

No. 87–3313.

United States Court of Appeals, Sixth Circuit.

Argued June 6, 1988.

Decided July 7, 1988.

---

T.N. Trikilis, Chippewa Lake, Ohio, pro se.

Peter A. Cantwell, Chicago, Ill., pro se.

Stephen E. Smith, Cantwell, Smith & Van Daele, Chicago, Ill., for plaintiffs-appellees.

Stephen F. Boulton, Cleveland, Ohio, for attorneys-appellees.

Leonard B. Scharfeld, Cleveland, Ohio, pro se.

Before MARTIN, MILBURN and GUY, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Theodore N. Trikilis appeals the district court's decision to deny his motion for sanctions under Fed.R.Civ.P. 11 against plaintiffs Richard P. Mihalik, Don Dough-ty, and Paul Useloff, and against attorneys Peter A. Cantwell, Stephen F. Boulton, and Leonard B. Scharfeld. We affirm.

This appeal represents the latest, and we hope final, chapter in this protracted litigation. The action began in April 1980 when the plaintiffs sued Trikilis, Pro Arts, Inc., and two other men in federal district court in Illinois for breach of contract and fraud. During the 1970's, the plaintiffs were employed in various capacities at Pro Arts, Inc., a company in the business of distributing art posters to retail outlets. The three men were fired by Trikilis, one of the principal owners of Pro Arts, for allegedly violating their employment agreements by forming a separate company which competed against Pro Arts. In their suit against Trikilis, however, the plaintiffs claimed that he breached their contracts, and they alleged that Trikilis' conduct violated federal anti-trust laws.

Following some initial discovery relating to jurisdictional issues and venue, the Illinois district court ruled that it had jurisdiction. It also ordered Trikilis and the other defendants to pay $7,000 for attorneys' fees and other expenses incurred by the plaintiffs in responding to motions which the court found were interposed in "bad faith and vexatious[ly]."[1] For reasons that are not clear in this record, the case was, in September 1981, transferred to the Northern District of Ohio.

During the following two-and-one-half years, the parties filed numerous motions. On more than one occasion, moreover, each party requested that discovery be extended. Eventually, after repeated attempts to set a firm trial date, the Ohio district court's patience ran out. On the day of the scheduled trial, March 26, 1984, the plaintiffs' attorney moved to dismiss the amended complaint without prejudice, but Trikilis and the other defendants objected. The court denied the plaintiffs' motion and asked both parties if they were prepared to

---

1. In support of his motion to dismiss for lack of personal jurisdiction, Trikilis had filed an affidavit asserting that Pro Arts, Inc., had not conducted any business in Illinois. During a subsequent deposition, however, Trikilis admitted that his company had conducted business in that state. The court felt that this conduct, among other things, constituted bad faith which warranted the imposition of sanctions.

commence trial. Trikilis and the other defendants said they were ready to begin, but the plaintiffs' attorney told the court that his clients were not. The district court then ordered the complaint dismissed with prejudice for failure to prosecute.

The plaintiffs appealed this decision, and this court reversed. On May 16, 1985, this court held that the district court had abused its discretion in directing dismissal with prejudice because this court believed that Trikilis and the other defendants were partially responsible for the district court's "understandable frustration." 765 F.2d 145.

On remand, the case was assigned to a new judge. On August 28, 1986, after another year of discovery, the district court held a pretrial conference. At this conference, Trikilis' attorney, Roger R. Ingraham, apparently stated that Trikilis and the other defendants had no money with which to satisfy any judgment that could be entered against them. Although Trikilis denies that he is judgment-proof, the court subsequently granted Ingraham's motion to withdraw as Trikilis' counsel because Trikilis did not have enough money to pay his legal expenses.[2] At this same conference, the court set a firm trial date of October 27, 1986.

Less than a week before the trial, however, the plaintiffs filed a motion for voluntary dismissal. The memorandum accompanying that motion apparently stated that, although they continued to believe their claims were valid, the plaintiffs had decided to abandon their claims because they did not want to incur any more expenses to seek a judgment which quite possibly could not be satisfied. On October 23, two days after this motion was filed, the court conducted a conference call with Trikilis and the plaintiffs' attorney, Peter Cantwell. During this call, the court said that the plaintiffs must either proceed to trial or accept a dismissal with prejudice. The plaintiffs chose the latter, and, on October 31, the district court entered an order dismissing the plaintiffs' complaint with prejudice.

On March 13, 1987, more than four months after the entry of judgment, Trikilis, possibly remembering the earlier action of the Illinois district judge, filed a motion for sanctions under Rule 11. Trikilis sought $15,000 in "time fees" and $1,404.67 in "out-of-pocket expenses," both purportedly incurred in preparing for the scheduled trial. The district court promptly denied this motion, and Trikilis now appeals that decision.

Rule 11 requires that "[e]very pleading, motion, and other paper of a party represented by an attorney" be signed by an attorney of record, and the rule provides:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The test for the imposition of Rule 11 sanctions in this circuit is whether the individual's conduct was reasonable under the circumstances. *INVST Financial Group v. Chem–Nuclear Systems*, 815 F.2d 391, 401 (6th Cir.1987). If the court finds that the alleged misconduct was not reasonable, the court must impose sanctions. The nature and amount of the sanctions, though, may vary depending upon the severity of the

---

**2.** Since that time, Trikilis has been representing himself.

misconduct. *Albright v. Upjohn Co.*, 788 F.2d 1217, 1222 (6th Cir.1986). For example, where the court concludes that an attorney acted in good faith, yet violated Rule 11 because of overzealousness, the court may compute the amount of the sanctions more leniently. *See Yancey v. Carroll County*, 674 F.Supp. 572 (E.D.Ky. 1987).

Although the reasonableness test presents a mixed question of law and fact, a district court's decision regarding Rule 11 sanctions is reviewed under an abuse of discretion standard because "of the district court's more intimate knowledge of the facts of these cases." *Century Products, Inc. v. Sutter*, 837 F.2d 247, 253 (6th Cir. 1988). *Accord Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 872 (5th Cir.1988) (en banc) ("After careful consideration of the policies behind Rule 11, we believe application of an abuse of discretion standard across-the-board to all issues in Rule 11 cases is the better approach."); *EBI, Inc. v. Gator Industries, Inc.*, 807 F.2d 1, 6 (1st Cir.1986) ("Our standard of review [in Rule 11 cases], of course, permits us to look only for abuse of discretion."); *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 158 (3d Cir.1986) ("The consideration of counsel fees under ... Rule 11 ... is a matter for the informed judgment of the district court."); *Stevens v. Lawyers Mutual Liability Insurance Company of North Carolina*, 789 F.2d 1056, 1060 (4th Cir.1986) ("a district court's imposition of Rule 11 sanctions is ordinarily entitled to deference by this Court and may not be disturbed except for abuse of discretion"); *O'Connell v. Champion International Corp.*, 812 F.2d 393, 395 (8th Cir. 1987) ("whether a violation [of Rule 11] has occurred is a matter for the [district] court to determine, and this determination involves matters of judgment and degree"); *Cotner v. Hopkins*, 795 F.2d 900, 903 (10th Cir.1986) ("The district court's imposition of a sanction under Rule 11 is subject to review for abuse of discretion."). In order to facilitate appellate review and ensure that we have something before us so that we may apply the appropriately deferential standard of review, district courts must make specific findings of facts and conclusions of law. *See Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1437 (7th Cir.1987).

Here, Trikilis argues that the district court should have imposed sanctions on the plaintiffs and their attorneys because this action was filed and the litigation was conducted for several years with knowledge that he had a strong defense to their claims. As a result, Trikilis contends, he should be compensated for having spent time and money preparing his defense.

At the outset, we note that the focus of Trikilis' argument is misplaced. Throughout his pleas, Trikilis has emphasized the amount of work he was required to do to defend this action. Although he occasionally asserts, though vaguely, that the plaintiffs initiated this suit and pursued the litigation in order to harass him, Trikilis consistently emphasizes that, because he prevailed, he deserves to be compensated for his expenses. Trikilis does not comprehend Rule 11's true purpose.

Since about 1800, American courts have typically required each party to a lawsuit to pay its own legal expenses regardless of the outcome. *See Alyeska Pipeline Service Co. v. The Wilderness Society*, 421 U.S. 240, 247–257, 95 S.Ct. 1612, 1616–1621, 44 L.Ed.2d 141 (1975) (chronicling the history of fee-shifting in America). By adopting this rule, American courts implicitly rejected the English tradition of routinely awarding attorneys' fees to the prevailing party. While the English Rule focused on providing full compensation to the winner, the American Rule emphasized equal access to justice.

The American Rule has been perpetuated because it represents a democratic ideal. Unfettered access to the courts for all citizens with genuine legal disputes has become a cornerstone of the American concept of justice. All persons are entitled to their day in court, however poor they may be and however rich their opponents. The courts fear that injured parties, particularly those of modest means, would be discouraged from invoking the judicial system if the

cost of losing an action included payment of one's opponent's legal bills....

The American Rule also reflects an equitable principle that penalizing a party for merely defending or prosecuting a lawsuit is unfair. The Supreme Court has recognized that the results of litigation are frequently uncertain and that making an inaccurate prediction of how a court will resolve a case does not warrant a penalty. Finally, the American Rule provides a convenient administrative scheme. By not shifting fees, courts are not burdened with the somewhat arbitrary calculation of the "reasonable costs" incurred by a prevailing party. Note, *The Dynamics of Rule 11: Preventing Frivolous Litigation By Demanding Professional Responsibility*, 61 N.Y.U.L. Rev. 300, 304–305 (1986) (citations omitted). Where American courts have modified the American Rule, they have done so in an effort to punish and deter lawyers and parties who abuse the system. *Id.* at 328–329. Rule 11 is no exception. Its drafters indicate that Rule 11 was amended in 1984 because the old Rule 11 was not "effective in deterring abuses." Fed.R.Civ.P. 11 Advisory Committee's Note. Accordingly, Rule 11 makes no mention of compensating the prevailing party, but instead requires a court to impose sanctions against attorneys and parties who file pleadings, motions, or other signed papers that are not well grounded in fact, are not warranted by existing law or a good faith argument for the modification of existing law, or are filed for any improper purpose. Therefore, Trikilis misperceives the purpose of Rule 11 when he argues that Rule 11 sanctions are appropriate because he spent considerable sums in the successful defense of this lawsuit.

There is another, more fundamental flaw in Trikilis' reasoning. He contends that, because the plaintiffs and their attorneys knew or should have known that he had a plausible reason for firing the three employees, the case should not have been brought in the first place. The gist of his argument is that, where a plaintiff or his attorney knows that the defendant has a strong, and possibly winning, defense, they will be sanctioned if they file a complaint. Again, Trikilis misunderstands Rule 11.

As stated above, the test for the imposition of Rule 11 sanctions is whether the alleged misconduct was reasonable under the circumstances. It is not per se unreasonable to initiate a law suit and pursue a possible claim where the defendant may have a strong defense. Upon reviewing the record, we conclude that it was not unreasonable for the plaintiffs and their attorneys to bring this action. If their claims were so frivolous, we find it remarkable that the district court would allow the case to go to trial. Obviously, the court believed that a trial was necessary in order to determine which side had the superior position. In such a situation, it would be highly unusual and almost certainly inappropriate to impose Rule 11 sanctions against one party merely because the other side prevailed.

Accordingly, the district court's decision to deny Trikilis' request for sanctions is affirmed.

