is REMANDED for further proceedings in compliance herewith.

**BODENHAMER BUILDING CORPORATION, Plaintiff–Appellee,**

v.

**ARCHITECTURAL RESEARCH CORPORATION; Ar–Lite Panelcraft, Inc.; and American Standards Testing Bureau, Inc., Defendants–Appellants.**

**Nos. 90–2135, 90–2310.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 28, 1992.

Decided March 10, 1993.

---

David M. Hayes, Clark, Klein & Beaumont, Detroit, MI, Charles D. Bavol (argued and briefed), Bavol & Associates, Tampa, FL, for plaintiff-appellee.

Robert L. Blamer, Cummings, McClorey, Davis & Acho, Livonia, MI, W. Breck Weigel (argued and briefed), Vorys, Sater, Seymour & Pease, Cincinnati, OH, for defendants-appellants.

Before: RYAN and SUHRHEINRICH, Circuit Judges; and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

This case is before us a second time. In our earlier opinion, we affirmed a damage award but vacated an award of attorneys' fees on the ground that the district court had failed to make the findings necessary to support such an award under Federal Rule of Civil Procedure 11. *Bodenhamer Building Corp. v. Architectural Research Corp. (Bodenhamer I)*, 873 F.2d 109 (6th Cir.1989). On remand, the district court steadfastly refused once again to make the necessary findings. Accordingly, we are compelled once more to vacate the award and to remand the case for further proceedings.

I

The relevant facts are set forth in *Bodenhamer I.* Briefly, however, they are as follows. Appellee Bodenhamer Building Corporation ("Bodenhamer") contracted to purchase building materials from appellant Architectural Research Corporation ("ARC"). ARC was a subsidiary of appellant American Standards Testing Bureau ("ASTB"). Subsequently, ASTB and ARC entered into a revolving loan agreement that left ARC woefully undercapitalized and indebted to ASTB. When ARC defaulted on the building materials contract, Bodenhamer sued and won a judgment of $49,633.66. Before judgment could be collected, however, ASTB foreclosed on its loan to ARC. ARC's assets were sold at an auction attended only by representatives of ASTB, who purchased them for inadequate consideration.

Its assets sold, ARC ceased doing business, leaving unpaid its debts to Bodenhamer and others. ASTB then created another wholly-owned subsidiary, appellant Ar–Lite Panelcraft, Inc. ("API"), to assume the operations abandoned by ARC. API took over ARC's facility and commenced operations the day after the auction, assuming the bulk of the unfulfilled contracts entered into by its predecessor.

Frustrated in its efforts to collect the judgment, Bodenhamer brought a diversity action seeking, under various theories, to pierce ARC's corporate veil and hold ASTB and API responsible for the judgment against ARC. In support of its theory that ASTB and the related businesses had disregarded the corporate form, Bodenhamer's complaint alleged, among other things, that ASTB had paid insufficient consideration for ARC's assets, leaving ARC insolvent, and that API was nothing more than a successor to ARC. The defendants were represented at the time by in-house counsel, who had played a large role in arranging the asset-shuffling that had given rise to the suit. Through counsel, the defen-

dants filed an answer in which they denied most of the allegations and raised a counterclaim against Bodenhamer.[1]

The matter proceeded to a jury trial on some claims and to a bench trial on others. Both judge and jury found in favor of Bodenhamer, and the court entered judgment in the amount of $51,069.75. The court also held that Bodenhamer was entitled to attorneys' fees under Rule 11, and it ordered the company to document its fees and costs. Bodenhamer complied by submitting affidavits totalling fifty pages that documented expenses in the amount of $84,209.80. This amount included $73,550 in attorneys' fees, representing 921.8 hours of work, and $10,659.80 in costs. The affidavit did not indicate any of the attorneys' hourly rates, although it did identify each attorney separately and indicate that attorney's position within the firm (*i.e.*, associate, partner)[2] as of the conclusion of litigation on the merits. For reasons that will later become clear, the court deducted $6,414.05 from this amount and awarded the difference—$77,795.75—to Bodenhamer. The court based this award on its finding that the counterclaim was baseless, that the conduct of the defense was "well below professional standards," and that "the entire defense of this case was offered merely to require the plaintiff to expend enough money so as to prevent further prosecution of plaintiff's claims." *Bodenhamer Building Corp. v. Architectural Research Corp.*, No. 83–CV–71887–DT, slip op. at 13 (E.D.Mich. Oct. 3, 1986).

The defendants appealed to this court. In *Bodenhamer I*, we affirmed the judgment but reversed the award of attorneys' fees. We explained our reasoning as follows:

[B]efore a district court awards an attorney fee, Rule 11 requires a finding that the recoverable fee was induced by the filing of a sanctionable pleading. "[A] district judge faced with a sanction motion must make certain findings determining that an award is appropriate.

---

1. The district court eventually dismissed the counterclaim, but not until Bodenhamer's attorneys had spent at least 60 hours preparing to respond to it.

2. The affidavit documented approximately 147 hours of paralegal time as well.

Careful analysis and discrete findings are required, no matter how exasperating the case." *In re Ruben*, 825 F.2d 977, 990–91 (6th Cir.1987). Although the court implied that the counterclaim against Douglas Bodenhamer and Bodenhamer Building Corporation was entirely unjustified, neither the data submitted nor the findings of the court indicate how any particular pleading, motion, or paper relates to any particular expense or attorney fee. We therefore must vacate the award of attorney fees.

*Bodenhamer I*, 873 F.2d at 114. Having thus reminded the district court that expenses compensable under Rule 11 were limited to those incurred as a result of the filing of an offensive pleading, we advised the court, without restricting further inquiry, that the only pleading that appeared sanctionable was the counterclaim.

On remand, the parties submitted briefs and the court heard oral argument. The court did not, however, hold an evidentiary hearing, and the parties submitted no additional proof. Nonetheless, the court issued an order reinstating the original award of $77,795.75. This time, however, the court elected not to attribute Bodenhamer's expenses to the counterclaim. Rather, the court ruled that the defendants' answer was the sanctionable pleading. The court observed that the answer, which was prepared by the attorneys who orchestrated the fraud of which the plaintiff complained, contained many denials of allegations in the complaint that the attorneys knew to be true. The court stated that, "[b]ecause of Defendant's failure to cooperate, Bodenhamer engaged in extensive discovery practice. This enormous expenditure was generally attributable to Defendant's failure to truthfully respond to plaintiff's complaint." *Bodenhamer Building Corp. v. Architectural Research Corp.*, No. 83–CV–71887–DT, slip op. at 15 (E.D.Mich. Sept. 13, 1990). Accordingly, the court concluded that the entire course of litigation had been induced by the offensive nature of the answer.

The defendants appeal the district court's reinstatement of its original award.

## II

■ The imposition of sanctions under Rule 11 is committed to the trial court's discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990). Accordingly, we may overturn an award of sanctions only upon a finding that the district court abused its discretion. That discretion is not, however, completely unfettered. First, where a court has decided that a pleading has been signed in violation of Rule 11, the court must impose a sanction. Second, and more relevant here, the amount of the sanction must be reasonable. *INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.*, 815 F.2d 391, 404 (6th Cir.1987).

■ As a preliminary matter, we reject defendants' contention that an answer is not a pleading capable of being sanctioned. Rule 11 provides that "[e]very pleading, motion, or other paper" may be the basis for a sanction. "Pleadings" are defined elsewhere in the Federal Rules of Civil Procedure as including answers. *See, e.g.,* Fed.R.Civ.P. 7(a), 8(b), 10(b). Furthermore, even if answers were not "pleadings," they would certainly qualify as "other papers." Thus, both the counterclaim and the answer may legitimately serve as the bases of a Rule 11 sanction.

■ Nor do we quarrel with the district court's decision to impose some quantum of sanctions. We agree with the district court that the defendants knew many of the allegations in Bodenhamer's complaint to be true, and yet they denied them or, at best, qualified their admissions. Under such circumstances, we cannot deny that a large part of Bodenhamer's expenditures could have been avoided if the defendants had answered the complaint truthfully.

■ Nonetheless, the district court's refusal to make the findings necessary to support a blanket award of attorneys' fees compels us to overturn the award. As we informed the district court, Rule 11 authorizes the award of "reasonable expenses incurred *because of the filing of*" offensive

pleadings (emphasis added). *Bodenhamer I*, 873 F.2d at 114. Accordingly, before an award of attorneys' fees may be made under the rule, it must be shown that the fees were incurred because of the filing of an improper pleading. As our court has previously noted, "an award of attorneys' fees should be limited to those expenses reasonably incurred to meet the other party's groundless, bad-faith procedural moves." *Rathbun v. Warren City Schools (In re Ruben)*, 825 F.2d 977, 990 (6th Cir.1987) (quoting *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir.1977)). Accordingly, before granting a motion for fees under Rule 11, a trial court must "analyze the impact upon [the moving party] of discrete acts of claimed misconduct." *Rathbun*, 825 F.2d at 990. *See also Century Products, Inc. v. Sutter*, 837 F.2d 247, 251 (6th Cir.1988); *INVST*, 815 F.2d at 404.

Our earlier instructions apparently had little effect, for the trial court failed to make the necessary findings. Although it purported to make additional findings of fact, those findings amounted to little more than a rehashing of its original reasoning. Indeed, the district court's findings can be reduced to a single proposition: the entire course of litigation was necessitated by the improper denials contained in the defendants' answer. Such a finding does not suffice to support a blanket award of attorneys' fees under Rule 11. It is based on the unlikely proposition that every material denial contained in the defendants' answer was improper, and on the untenable supposition that, had the defendants responded to the complaint truthfully, the plaintiff would have been able to recover without the expenditure of an additional penny. This reasoning is flawed for two reasons. First, the proposition that every denial in the defendants' answer was improper is simply not supported by the record. The complaint contained a number of allegations that were so strongly phrased or so grounded in opinion that denials were the only appropriate response.[3]

Second, the reasoning embodied in the district court's award of fees is flawed because it assumes that, had the defendants' answer been truthful, the plaintiff would have been able to recover without further expenditure. Such an outcome could have obtained, however, only if the defendants had confessed judgment or had allowed a default judgment to be entered for failure to file an answer. Viewed in this manner, the district court's award of fees is based on the proposition that, under the circumstances of this case, Rule 11 prohibited the defendants, not only from filing an offensive answer, but from filing any answer whatsoever. This view reflects a fundamental misunderstanding of the function of Rule 11.

Rule 11 was not designed to punish defendants for undertaking to defend a lawsuit, and recovery cannot be based merely on a defendant's election to defend a suit, even if the suit is later proved meritorious. *See Mihalik v. Pro Arts, Inc.*, 851 F.2d 790, 794 (6th Cir.1988) (rejecting defendant's argument that, "where a plaintiff or his attorney knows that the defendant has a strong, and possibly winning, defense, they will be sanctioned if they file a complaint"). To hold otherwise would be to abandon the American Rule, under which the prevailing party must pay his or her own attorneys' fees. *See Cooter & Gell*, 496 U.S. at 408, 110 S.Ct. at 2462; *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1375 (6th Cir.1987). Victorious litigants in this country have been required for almost two centuries to shoulder their own litigation expenses, *Alyeska*, 421 U.S. at 249, 95 S.Ct. at 1618; *Mihalik*, 851 F.2d at 793, and the 1983 amendments to Rule 11 were not intended to alter this

---

**3.** This is true, for instance, of the allegation that ASTB paid insufficient consideration for ARC assets, since that allegation rested on the plain-

fundamental truth.[4] Yet such is precisely the effect of the district court's holding.

The true implication of the district court's ruling goes further still. Under the court's award, the plaintiff has been allowed to recover for all services performed in connection with the case from its inception on November 16, 1982. The defendants' answer, on which the award of attorneys' fees is purportedly based, was not filed until June 22, 1983, and the plaintiff's attorneys did not begin to review that answer until several days later. According to the records submitted to ˌthe trial court, plaintiff's counsel expended during this seven-month period 84 hours, representing approximately $6,702 in fees. Thus, the award of attorneys' fees includes compensation for work that could not possibly have been caused by an offensive pleading. Thus, the district court interpreted Rule 11 as prohibiting more than the filing of an answer; instead, it implicitly interpreted the rule as proscribing the very conduct of the defendants that gave rise to the suit in the first place.

■ Here, too, the reasoning embodied in the district court's award is based on a manifestly erroneous interpretation of Rule 11. Rule 11 is related to pleadings, not to conduct. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1229 (6th Cir.1989). That a defendant's conduct has compelled a plaintiff to file suit is not a proper grounds for the award of attorneys' fees under Rule 11. Whatever misconduct gave rise to the suit constitutes the basis of the cause of action and must be compensated, not by an award of attorneys' fees, but by an award of damages in the case-in-chief, as was done in this case. Rule 11 was never intended to compensate a prevailing plaintiff for the costs of preparing to file suit.

We concede that the job of trying to break down attorney fees in a way consistent with the rule is an unmitigated headache. Nonetheless, this court's cursory examination of the record, made without desiring or intending to invade the prerogative of the trial court, indicates that the district court's award of fees includes charges for at least seven types of activity for which expenses are not properly compensable under Rule 11:

■ (1) Time spent in preparing the case prior to the filing of the answer. As discussed above, this work could not possibly have been necessitated by the wrongful character of any denials in the defendants' answer. It was, rather, brought about by the defendant's conduct prior to the commencement of litigation. Clearly, Rule 11 was never intended to compensate this type of expense.

■ (2) Time spent researching the causes of action, preparing motions for and against summary judgment, and researching jury instructions. All of this work enabled the plaintiff to establish the legal merits of its position, and would need to have been performed regardless of the contents of the defendants' answer. Because this work cannot conceivably have been necessitated by the wrongful nature of any denials in the answer, there is no legitimate justification for compensating the plaintiff for these charges.

■ (3) Work associated with the plaintiff's successful attempt to disqualify the defendants' in-house counsel. Perhaps counsel should have disqualified themselves, but even so, it is hard to see how their failure to do so could constitute the basis of a Rule 11 sanction.

■ (4) Work associated with *voir dire*. As noted above (and as further discussed below), many matters were properly contested, including the value of ARC's assets. Accordingly, it is altogether likely that a jury trial would have been required in all events. Because the improper denials in the defendants' answer did not necessitate

tiff's opinion regarding the proper method of valuing ARC's assets.

**4.** While certain statutes, such as the Civil Rights Act of 1964, 78 Stat. 244, provide for the award

of attorneys' fees, *see* 42 U.S.C. § 2000a–3(b), the general rule prohibiting such awards has never seriously been in doubt. *See Alyeska,* 421 U.S. at 257, 95 S.Ct. at 1621.

the selection of a jury, it is not chargeable under Rule 11.

 (5) Work associated with selecting and preparing experts to testify as to the value of ARC's assets. One of the most hotly contested issues in this case was the proper value to be assigned to ARC's assets, which ASTB purchased. This was a difficult question of fact on which the opinions of the experts diverged widely. It is difficult to believe that such charges could be properly includable under Rule 11, especially under the facts of this case.

 (6) Time spent researching methods of collecting the judgment, including research into garnishment. This research represents the plaintiff's effort to ensure the collection of the judgment. Such efforts were not necessitated by any violation of Rule 11 on the part of the defendants, but rather would have been prudent even in the face of a default judgment.

 (7) Time spent evaluating several settlement offers. Again, it should be self-evident that this work was not occasioned by the filing of any offensive paper or pleading. That the settlement negotiations were unsuccessful does not constitute proper grounds for the recovery under Rule 11 of the costs of engaging in them.

Examination of the record available to this court reveals that work associated with the completion of the foregoing tasks represented, under the most conservative estimate,[5] at least 247 hours of labor, valued at $19,709.[6] This figure is equal to more than twenty-five percent of the total attorneys' fees awarded, and approximately forty percent of the entire sum awarded as damages. Of course, the initial respon-

sibility for determining what costs were incurred as a result of an offensive pleading rests with the trial court, and it is not for this court to invade that province. Accordingly, the foregoing represents, not a refinement that we are undertaking to make at this stage of the proceedings, but only our tentative identification, based on the sparse record available to this court, of the most obvious abuses of discretion. The real error on the part of the trial court was in misunderstanding its duty of fact finding on remand. We cannot remedy that shortfall on appeal.

 Bodenhamer suggests that the district court did in fact segregate the plaintiff's expenses, and that its award therefore compensates only those expenses incurred as a direct result of the filing of an offensive pleading. The appellee states that:

> Clearly, the court carefully reviewed the affidavits in determining a reasonable award of costs and fees. The court did not merely award Appellee all costs and fees documented. In fact, Appellee documented that it incurred costs and fees related to the litigation in the amount of $84,209.80. However, the court imposed sanctions in the amount of $77,795.75, an amount the trial court considered reasonable.

Bodenhamer thus appears to be arguing that the district court's refusal to award the difference of $6,414.05 is attributable to the court's determination, based upon its examination of the record, that those expenses could not be compensated under Rule 11. Not so. In point of fact, that difference corresponds to the penny with the amount of the subtotal on one of the

---

5. The following figures do not include expenditures of time devoted to evaluation of strategy, preparation for and attendance at trial, and other tasks of a general nature. On remand, the district court will need to analyze these costs with more exacting scrutiny in order to determine what portion of the trial costs are attributable to the defendants' misconduct.

6. This figure may be broken down as follows:

| task | hours | fees |
|---|---|---|
| pre-answer work | 84 | $ 6,702 |
| merits/instructions | 83 | $ 6,623 |
| disqualification | 30 | $ 2,394 |
| *voir dire* | 21 | $ 1,676 |
| experts/valuation | 15 | $ 1,197 |
| garnishment/collection | 8 | $ 638 |
| settlement offers | 6 | $ 479 |
| total: | 247 | $19,709 |

It must be borne in mind, however, that these calculations represent only the crudest approximation, in terms of both the types of tasks and the number of hours spent on them, of fees that were not incurred in response to a sanctionable pleading.

fifty pages of affidavits that Bodenhamer filed in support of its motion for sanctions.[7] The exclusion from the fee award of the items on this last page, when contrasted with the inclusion in that award of similar items described elsewhere, leaves the distinct impression that whoever made the calculation simply overlooked those additional expenses. Thus, with the exception of this small and most likely accidental omission, the trial court simply awarded all of the fees incurred on behalf of the plaintiff during the entire litigation, as it had done before. Such an award is neither authorized by Rule 11 nor consistent with our remand.

This court is further concerned by the absence of any proper basis whereby we can conclude that the district court did or did not properly exercise its discretion in holding that the fees sought were reasonable. Generally, an inquiry into the reasonableness of attorneys' fees involves a determination of the suitability of the number of hours expended and an analysis of the propriety of the hourly fee charged. *See Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This dual inquiry, which results in the calculation of a "lodestar," was not undertaken in this case. The record reveals that a total of 921.8 hours were expended and that this resulted in the billing of $73,550 in fees. From this, one could reason that the average hourly rate must have been approximately $79.79, a figure that seems not to be excessive. The difficulty with such an approach, however, is that the record provides no basis for identifying the precise hourly rates billed by each of the 22 individuals associated with the case. The record reveals merely that 440 partner hours, 334.8 associate hours, and 147 paralegal hours were expended on the case.[8] While one could on that basis guess the exact rate for each of the three types of services, any determination of reasonableness would necessarily, without some clue from the evidence, rest upon sheer conjecture. We cannot base a finding of reasonableness merely on a finding that, overall, the hourly rates averaged approximately $80 per hour. Indeed, it is more than likely that no one billed at that rate, but of course we have no way of knowing.[9]

Concededly, it seems rather odd to penalize Bodenhamer for failing to produce a more detailed evidentiary record when circumstances indicated that the district court was evidently of the opinion that no such record would be necessary. One could argue that, under the circumstances, Bodenhamer was under no obligation to provide the trial court with more detailed information. Nonetheless, we hold that it is incumbent upon any plaintiff who wishes to recover fees to make some calculation

---

**7.** The plaintiff's motion was supported by a 47-page affidavit, completed by a partner in the firm of Clark, Klein & Beaumont, that documented $75,337.84 in fees and costs, and by a three-page affidavit, completed by Douglas Bodenhamer, that documented an additional $8,871.96 in expenses. Page three of Bodenhamer's affidavit sets forth $6,414.05 in costs, including $3,600 paid to expert witnesses and $2,456.95 paid to court reporters.

**8.** Even these figures are misleading, since at least one attorney was accepted into the partnership while working on the case. Because the record appears to reflect the status of the attorneys only as of the conclusion of litigation on the merits, it overstates the number of hours expended by senior attorneys and understates the number of hours expended by junior attorneys.

**9.** Also somewhat troubling is the absence of any determination that the number of hours expended on any given task was reasonable. Although the record does not admit of close analysis, a good argument could be made that the expenditure of over $84,000 in an attempt to collect a judgment of approximately $50,000 could not possibly be reasonable. *See INVST,* 815 F.2d at 391 (noting that "[a] reasonableness inquiry necessarily requires a determination as to what extent plaintiff's expenses and fees could have been avoided and were self-imposed"); *Jackson,* 875 F.2d at 1230 (noting that "a party who seeks attorney's fees as a Rule 11 sanction must mitigate damages" and finding it an abuse of discretion "to award all fees claimed when a party has expended a great deal of time and effort defending patently frivolous claims"). *See also Olga's Kitchen v. Papo* [815 F.2d 79 (table) 1987 WL 36385] (text at 1987 U.S.App. LEXIS 2205 at *47) (6th Cir.) (noting that litigants requesting fees "must mitigate damages by not claiming an excessive amount of hours and funds in responding to patently unmeritorious claims or positions").

that is capable of review. Such an exercise does not appear in the record before us. Plaintiff's counsel surely was aware of each attorney's hourly rate, and that information could easily have been included in the affidavits. Furthermore, because this information is not within the knowledge of the defendants, it is not the kind of information that they could be expected to furnish. Finally, requiring the defendants to identify those charges that they believe to be noncompensable, thereby implicitly approving of the remainder, is inconsistent with our adversarial system. Asking the defendants to justify a different figure is somewhat akin to requesting a person condemned to be hung to adjust his own noose so it will work smoothly.

For the foregoing reasons, we REVERSE the district court's order awarding attorney fees and REMAND the case to the district court for proceedings in conformity with this opinion.