**Lobin KASSAB, Plaintiff–Appellant,**

v.

**AETNA INDUSTRIES, INC.; United Automobile Workers of America; United Automobile, Aerospace and Agricultural Implement Workers of America, Local 155, Defendants–Appellees.**

No. 01–1452.

United States Court of Appeals, Sixth Circuit.

Dec. 20, 2002.

Before BOGGS and COLE, Circuit Judges; and BELL, Chief District Judge.*

PER CURIAM.

Plaintiff Lobin Kassab sued his former employer, Aetna Industries, Inc. ("Aetna"). his union local, United Automobile, Aerospace and Agricultural Implement Workers of America. Local 155 ("Local"), and his union international, United Automobile Workers ("International"). claiming national origin discrimination, in violation of 42 U.S.C. §§ 1981 and 2000e. breach of employment contract and breach of duty of fair representation. The district court dismissed the discrimination claims for lack of a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") and construed the remaining claims as a hybrid § 301/duty-of-representation claim. The district court then dismissed the duty of fair representation claim for Kassab's failure to exhaust internal union appeals and for lack of substantive evidence to support the claim. Although long-standing Supreme Court and Sixth Circuit precedent dictate that dismissal of the fair representation claim unambiguously prevented relief on the claim against Aetna, Kassab's attorney, Frank G. Becker, filed a motion to preserve the claim against Aetna alone. The district court denied the motion, dismissed the claim against Aetna and imposed Fed. R.Civ.P. 11 sanctions in favor of Aetna. Kassab now appeals the dismissals of his hybrid § 301 claim against both Aetna and the Local, as well as the imposition of sanctions. We affirm the dismissal of Kassab's claims, but remand for a fuller explanation of the proper amount of the Rule 11 sanctions.

---

* The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

## I

Kassab was hired by Aetna in 1987 and, under the Collective Bargaining Agreement ("CBA") in effect at the time, automatically joined the Local. During the following twelve years, Kassab worked in different blue-collar positions to the satisfaction of both Kassab and Aetna. On May 28, 1999, Kassab requested permission from his substitute supervisor to leave two hours early in order to take his nephew, who had broken his arm, to the hospital. As the plant was short-handed at the time, the substitute supervisor requested that Kassab return to the plant after bringing the nephew to the hospital and that he provide medical documentation of the treatment. At this point, Kassab became visibly upset and pointed out his seniority and perfect attendance record. The temporary supervisor telephoned the regular supervisor and asked his advice on how to handle the situation. The regular supervisor recommended allowing Kassab to leave unconditionally, but would later testify that he "considered [Kassab]'s wild and erratic behavior this time to be so totally out of his character that I suspected there was a possibility of substance abuse on his part." Kassab then left the plant.

On June 1, 1999, when Kassab returned to the plant after a long weekend, the plant's human resources supervisor requested that Kassab take a drug screening test based on the foregoing events.[1] When informed of the drug test, Kassab asserted his right to the presence of a union representative under the CBA.[2] As there were no current union representatives available at the plant, the human resources supervisor instead called Donald Laing, a former long-time union representative. Laing explained to Kassab that refusing to take the drug test would probably result in termination. However, Kassab objected to being represented by Laing and asked why a drug test was required of him. When no answer was forthcoming, Kassab refused to take the test. Under Aetna's rules and regulations, refusal to follow instructions of a supervisor is an offense justifying immediate discharge and Kassab was terminated.

The following day, Kassab and Laing contacted a Local representative in order to file a written grievance. In the grievance, Kassab objected to his suspension on the grounds that it was based on the fact that he had refused to perform a function outside his job classification earlier on May 28. Under the CBA, such a grievance was required to be signed by the employee, but the union never requested that Kassab

---

1. Paragraph 91 of the CBA provides:
   The Company reserves the right to conduct tests on any employee covered by this Agreement for alcohol, drugs, or other controlled substances where the Company has reasonable grounds to suspect an employee is in possession of or under the influence of alcohol, drugs or other controlled substance. Any employee who refuses to submit to any such test ordered to be taken by the Company shall be deemed guilty of insubordination and shall be discharged.

2. Paragraph 8 of the CBA provides:
   A grievance shall be defined as any dispute which may arise between the Company and the Union or between an employee or a group of employees concerning the application, the interpretation, or alleged violation of this Agreement.... At the time that the aggrieved employee discusses the matter with the supervisor, he or she may request that a Committeeperson be present at that time. If the aggrieved employee requests the Committeeperson, the supervisor shall, within a reasonable amount of time, get the Committeeperson and release him/her so that the Committeeperson may be present at the time the complaint or grievance is discussed.

sign his grievance. Instead, the Local submitted it to Aetna unsigned on June 2 or 3, 1999. Nevertheless, Aetna accepted the unsigned grievance and considered it on the merits. Aetna was required to respond to the grievance within three days under the CBA, but in this case responded with a denial only on June 16, thirteen or fourteen days later.[3] Under the CBA, the Local had seven days to appeal the denial of the grievance, but did not do so. Instead, the president of the Local appealed personally to Aetna's Vice President of Human Resources to reinstate Kassab, but was refused. On July 1, fifteen days after the denial of the grievance, the time to request arbitration of the grievance expired. On August 5, the Local concluded that it could not win this case in arbitration and withdrew it from the grievance procedure. During this period, Kassab claims that he was not informed of the progress of the grievance by the Local. On August 25, the president of the Local informed Kassab by letter that his grievance could not prevail and had been withdrawn. The letter did not inform Kassab of his right to appeal the Local's decision within the union. However, Kassab subscribed to and read the UAW's magazine "Solidarity," which contained frequent articles on the internal UAW appeals procedure. In any case, Kassab did not make any attempt at an internal UAW appeal.

On October 26, 1999, Kassab filed a complaint in the United States District Court for the Eastern District of Michigan against Aetna, the Local, and the International. Count I alleged Aetna discriminated against Kassab on the basis of his "ethnic heritage," in violation of 42 U.S.C. § 1981. Count II alleged that Aetna, the Local, and the International discriminated against Kassab on the basis of his national origin, in violation of 42 U.S.C. § 2000e. There was no Count III. Count IV alleged that Aetna terminated Kassab in violation of his "employment contract." Count V alleged that the Local and the International breached their duty of fair representation to Kassab. Counts I and II were dismissed with prejudice because, *inter alia*, Kassab had failed to file a complaint of discrimination with the EEOC or obtain a right-to-sue letter. All defendants filed motions for summary judgment regarding the remaining claims. At this point, Kassab stated that he had decided "to have this case determined on the contractual basis and is withdrawing the claim of discrimination." JA 399 (Response to Defendant's Motion for Summary Judgment). On December 1, 2000, the district court granted the Local's motion and dismissed Count V with prejudice on the grounds, among others, that Kassab did not exhaust his internal union appeals and that there was no breach of the duty of fair representation. On February 26, 2001, the district court granted Aetna's motion and dismissed Count IV with prejudice because, without a breach of the duty of fair representation, the hybrid § 301 claim against Aetna was no longer viable. Kassab appealed both of these grants of summary judgment.

The trial was also marked by procedural irregularities attributable to Kassab's attorney, Becker. On November 27, 2000, when the district court held oral argument on the defendant's summary judgment motions, Becker failed to appear. On December 5, 2000, after the grant of summary judgment for the UAW defendants. Becker filed a motion for oral argument, to set aside the dismissal of Count V, or to pro-

---

**3.** The CBA specified that "in the event the Company fails to answer the grievance within the time limit specified, the grievance shall be deemed settled on the basis of the Union's request."

ceed on Count IV alone. The district court denied the motion. On December 20, 2000, Aetna served Becker with a Letter of Intent to File a Motion for Rule 11 Sanctions and a Brief in Support. On January 17, 2001, Aetna filed a motion for Rule 11 sanctions with the district court. On February 26, 2001, after briefing and oral argument, the district court imposed Rule 11 sanctions against Becker. On April 2, 2001, the district court ordered Becker to pay Aetna's claimed costs of $6,040.50. Becker appealed these Rule 11 sanctions.

## II

### A. Claims against the Local

For Kassab to prevail against the Local, he must first prove a breach of the duty of fair representation. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). "The relevant issue in assessing a Union's judgment is not whether it acted incorrectly, but whether it acted in bad faith." *Anderson v. Ideal Basic Indust.*, 804 F.2d 950, 953 (6th Cir.1986). "[M]ere negligence or mistaken judgment is insufficient to establish a breach of the union's duty." *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir.1983). Rather, a breach of duty may be established by a showing that the union "handle[d] a grievance in a 'perfunctory' manner, with caprice or without rational explanation." *Ibid.* The district court granted summary judgment to the UAW defendants on this issue. "This court reviews grants of summary judgment de novo, under the same standard as the district court." *Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 326 (6th Cir. 2001).

We affirm the district court's grant of summary judgment. Kassab fails to allege any facts sufficient to establish a genuine issue concerning the Union's alleged breach of the duty of fair representation. Union officials did not handle Kassab's grievance in a "perfunctory manner, with caprice or without rational explanation." To the contrary, according to the uncontradicted testimony of its officials, the Local investigated the facts surrounding Kassab's dismissal and personally appealed to management to reinstate Kassab on the basis of his previously good employment record.

The Local's failure to obtain Kassab's signature on his grievance did not affect its consideration on the merits and was not an issue raised at any time by anyone other than Kassab, in pursuing this suit. In the absence of any prejudice to Kassab, a failure to fulfill such a formal requirement does not constitute action in a perfunctory manner. The Local's failure to raise the issue of the timeliness of Aetna's initial response to the grievance and to insist on reinstatement on that basis was at worst negligence and therefore not a breach of the duty of fair representation. *See Dushaw v. Roadway Exp., Inc.*, 66 F.3d 129, 133 n. 1 (6th Cir.1995). Moreover, it appears to be the practice of the parties to the CBA not to strictly enforce procedural requirements against each other. The existence of such a practice is supported by Aetna's waiver of the signature requirement on Kassab's grievance. The Local's failure to keep Kassab informed of the progress of his grievance, if indeed it did, falls into the same category. Even if a "[u]nion may have acted negligently or exercised poor judgment in failing to keep [the union member] informed

of the status of his grievance .... this is not sufficient to support a claim of unfair representation." *Whitten v. Anchor Motor Freight, Inc.,* 521 F.2d 1335, 1341 (6th Cir.1975). Finally, "a union does not have to process a grievance that it deems lacks merit, as long as it makes that determination in good faith." *Williams v. Molpus,* 171 F.3d 360, 366–67 (6th Cir.1999).

■ Kassab has failed to introduce any evidence to contradict the Local's claims of good faith. Absent bad faith, the decision to withdraw the grievance cannot be held to be a breach of the duty of fair representation. Absent a breach of the duty of fair representation, the Local is not liable to Kassab.

### B. Claims against the International

■ The International is not liable to Kassab for both procedural and substantive reasons. First, the International is a separate legal entity from the Local, but was never served with a summons and complaint or otherwise properly made party to the suit. The answer was filed on behalf of the Local only. Therefore no relief can be granted against the International in this suit. Second, no acts or omissions by the International have been alleged that would subject it to direct liability to Kassab. Third, as the Local is not liable to Kassab, there exists no basis for vicarious liability.

### C. Claims against Aetna

■ While the original complaint was not entirely clear on the legal basis for Counts IV and V, the court below and now Kassab construe those counts as a hybrid

§ 301/duty-of-representation claim under the Labor Management Relations Act § 301.[4] "It is axiomatic that an aggrieved employee must exhaust any exclusive grievance and arbitration procedure created in a collective bargaining agreement prior to bringing a § 301(a) suit against the employer. A failure to exhaust may be excused, however, if the employee establishes that the union breached its duty of fair representation in the processing of the grievance." *Poole,* 706 F.2d at 183 (internal citations omitted); *see also Dushaw,* 66 F.3d at 132; *VanDerVeer v. United Parcel Service, Inc.,* 25 F.3d 403, 405 (6th Cir. 1994). As we noted above, the Local did not breach its duty of fair representation. We therefore turn to the issue of exhaustion.

Kassab did not exhaust the UAW appeals process, which is necessary to press a claim of a breach of the duty of fair representation. The internal UAW appeals process is governed by Articles 32 and 33 of the UAW Constitution. All UAW members are required to exhaust the internal appeals process before commencing litigation. The first level of internal appeal must be filed within sixty days of the time "the appellant first become aware, or reasonably should have become aware, of the alleged action or decision appealed." JA 189. The internal UAW procedure had the authority to provide the relief that Kassab requested in his complaint, that is money damages, and also to reinstate a withdrawn grievance. Kassab did not even attempt to use the UAW appeals process. Therefore, when Kassab's duty of fair representation against

---

4. The act provides:
   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount of controversy or without regard to the citizenship of the parties.
   29 U.S.C. § 185.

the Local failed, so did his claim against Aetna.

## III

### A. Imposition of Rule 11 Sanctions

■ The district court sanctioned Becker for violation of Rule 11.

> By presenting to the court ... a pleading, written motion or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Fed.R.Civ.P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may ... impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Fed.R.Civ.P. 11(c). "[T]he sanction may consist of ..., if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed.R.Civ.P. 11(c)(2). "[T]he appellate standard of review for a district court's

Rule 11 determination is ... abuse of discretion." *Apostolic Pentecostal Church v. Colbert*, 169 F.3d 409, 417 (6th Cir.1999).

Becker, in his district court filings maintaining Kassab's action against Aetna after dismissal of his claims against the Local, failed to consider the legal requirements of hybrid § 301 claims and persisted in doing so even after both Aetna's and the Local's opposition briefs in the district court.[5] In making his argument, Becker *sub silentio* ignored thirty-five years of clear precedents of both the Supreme Court and this court:

> [T]he wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.

*Vaca*, 386 U.S. at 186, 87 S.Ct. 903.[6]

> To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.

*Hines*, 424 U.S. at 570–71, 96 S.Ct. 1048. Thus respondent's characterization of his action against the employer as one for 'breach of contract' ignores the significance of the fact that it was brought in the District Court pursuant to

---

**5.** Becker remains steadfast in his misapprehension even in this court. "The dismissal of the Defendant Aetna by the lower court was apparently based on the previous dismissal of the UAW Defendants. (R. 46, JA 20) This case thus involves a classic contract case. The Plaintiff need only show existence of a contract, a breach and that the breach caused his damages. *Platsis v. E.F. Hutton & Co.*, 829 F.2d 13 ([6th Cir.] 1987)." Kassab Br. at 23. *Platsis* is a one-page per curiam opinion of this court summarily affirming a district

court's dismissal of breach of contract and securities fraud claims stemming from a tax shelter investment agreement gone wrong. *Platsis* does not involve a union, a collective bargaining agreement, or any labor law issue at all.

**6.** Becker cites *Vaca* in his appellate brief, but gives no indication that he has read the above-quoted passage. Kassab Br. at 24.

§ 301(a) of the LMRA and that the indispensable predicate for such an action is not a showing under traditional contract law that the discharge was a breach of the collective-bargaining agreement, but instead a demonstration that the Union breached its duty of fair representation.

*United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 62, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981).

> Moreover, unlike *Hoosier,* where the employee's complaint was rooted solely in § 301 of the LMRA, the respondent employee here has two claims, each with its own discrete jurisdictional base. The contract claim against the employer is based on § 301. but the duty of fair representation is derived from the NLRA. Yet the two claims are inextricably interdependent. "To prevail against either the company or the Union .... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 47 L.Ed.2d 231. Accordingly, a plaintiff must prevail upon his unfair representation claim before he may even litigate the merits of his § 301 claim against the employer.

*Id* at 66–67, 101 S.Ct. 1559 (Stewart, J., concurring) (internal citation form adjusted and footnote omitted).

> Because most collective-bargaining agreements accord finality to grievance or arbitration procedures established by the collective-bargaining agreement, an employee normally cannot bring a § 301 action against an employer unless he can show that the union breached its duty of fair representation in its handling of his grievance. Whether the employee sues both the labor union and the employer or only one of those entities, he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation.

*Teamsters, Local 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (internal citations omitted).

Becker's failure to understand the basic principles of labor law may have rendered filing the complaint and all subsequent motions sanctionable. It certainly rendered Becker's motion to sustain the action against Aetna alone after the dismissal of the UAW defendants sanctionable. In response to this baseless motion, Aetna was required to expend its legal resources to give Becker remedial lessons in labor law. The district court had a sound basis for awarding Rule 11 sanctions.

### B. Procedural Requirements for Rule 11 Sanctions

■ "When imposing sanctions, the court *shall describe* the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed." Fed.R.Civ.P. 11(c)(3) (emphasis added). Such an explanation may come from the sanctions order itself or may be found in the record.[7] Here, the district court's Rule 11 orders are entirely silent as to how Becker violated Rule 11 and on the calculation of the monetary sanction, but the record is somewhat more informative. At the sanctions hearing, the district court did provide sound reasons for imposing sanctions. But even at the hearing,

---

**7.** While Fed.R.Civ.P. 11(c)(3) is entitled "Order," the commentary on the section contemplates that the court "indicate[s] its reasons in a written order or on the record."

the basis for the amount of the sanction is doubtful:

> THE COURT: The motion for sanctions is highly appropriate under the circumstances of this lawsuit. And, indeed, it is plaintiff's good fortune, Mr. Becker, that the sanctions were not requested for all the activities that the defenses had to undergo in this lawsuit and not just the motion for oral argument that was made after you ignored the Court's notice of hearing.
>
> The case has been dismissed as to the international union, UAW; and as against the employer because a grievance which was withdrawn at some step along the grievance procedure was not appealed, that is, the withdrawal of the grievance by the union rep or the local union or the international itself, no appeals were taken from the decision of the union rep to withdraw the grievance. The procedure of the United Auto Workers which is known to every member and has been since time immemorial because it was the first union to adopt such a procedure requires that a member go all the way to the international union, international executive board or whatever that board is called to appeal mistreatment along the stages of a grievance procedure. This was not done. And any recourse to a court of law is inappropriate when the union itself has not gotten through the entire adjudication of a grievance. And as you know, an employer may not be held guilty of a breach of a contract when the union itself did not breach its duty of fair representation.
>
> So, for that reason the lawsuit was without merit from the start and should not have been taken. And then, when you did not appear for the hearing, the Court heard the other side and entered the order. I thought I entered both orders. And the matter is not a viable lawsuit. Appeals as required by the constitution of the union were not taken.
>
> So the motion is granted. Sanctions will be entered for the work done on the motion for oral argument which was made after, not coming, not attending the oral argument that was held on this first motion to dismiss.
>
> Now, have you got a statement of what those costs are?
>
> MR. MORGAN [counsel for Aetna]: I do, your Honor. I actually have-and I was at a labor conference over the last week and my law clerk brought this but I am not sure-it seems more than it should be. In other words, I have six thousand dollars.
>
> THE COURT: Oh, my goodness.
>
> MR. MORGAN: I have to go through the bills myself and just pick out those that have to do with this motion. *It's certainly much less than that.*
>
> THE COURT: All right. Thank you. Then submit it to Mr. Becker and to me. Submit it within five days and if I have not heard an objection within seven from Mr. Becker, we will assume that -
>
> MR. MORGAN: I have prepared an order, actually, a number of orders, not knowing how the Court was going to rule. One in which we grant the Rule Eleven sanctions in the amount to be determined by the Court at a later date.
>
> THE COURT: Fine.

JA 498–501 (emphasis added). The same day, the district court filed its first order imposing sanctions, stating no reasoning. The record indicates that an affidavit was served on Becker on February 28 and Aetna maintains that this affidavit supports the amount cited, despite the disclaimer emphasized above, but this affidavit never entered the record. On March

22, the district court filed its final sanctions order, still giving no reasoning. We have examined the entire record and if the district court gave the amount of the sanction any further thought, there is no indication of it.

"[B]efore an award of attorneys' fees may be made under the rule, it must be shown that the fees were incurred because of the filing of an improper pleading.... [B]efore granting a motion for fees under Rule 11, a trial court must analyze the impact upon the moving party of discrete acts of claimed misconduct." *Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 989 F.2d 213, 218 (6th Cir.1993). "An award of attorneys' fees against a plaintiff's attorney should be limited to those expenses reasonably incurred to meet the other party's groundless, bad faith procedural moves." *In re Ruben*, 825 F.2d 977, 990 (6th Cir.1987) (quoting *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir. 1977)) (internal alteration marks omitted). "[P]articularly when a substantial amount of money is involved, the district judge should state with some specificity the manner in which the sanction has been computed." 5A Charles Alan Wright & Arthur R. Miller. Federal Practice and Procedure § 1337, at 132–33 (2d ed.1990). While, this court recognizes "that the job of trying to break down attorney fees in a way consistent with the rule is an unmitigated headache," *Bodenhamer*, 989 F.2d at 219, compliance with Rule 11(c)(3) requires more than a brief, immediately disclaimed, statement of the costs by the opposing party's counsel and submission of letters to the court, which did not even enter the record. Relying on no more than this evidence and reasoning is contrary to the letter of Rule 11(c)(3) and hence an abuse of discretion. Therefore we remand for a fuller explanation of the sanctions amount.

## IV

We AFFIRM the district court's judgment with respect to the dismissal of all claims. However, with respect to the imposition of Rule 11 sanctions, we REMAND the case for a fuller explanation of the amount of the sanction.