Linda M. GOETZ, Ryan Craig Goetz, Robert Stephen Goetz, Plaintiffs-Appellants,

v.

AETNA CASUALTY AND SURETY COMPANY, Aetna Life and Casualty, and Casualty and Surety Division, Defendants-Appellees.

No. 82-6027.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1983.

Decided July 13, 1983.

562

W. Mike McCray, Newport Beach, Cal., for plaintiffs-appellants.

John L. Endicott, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendants-appellees.

Before SKOPIL, SCHROEDER, and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

Plaintiffs appeal the dismissal of their action seeking damages for defendant Aetna Casualty and Surety Company's refusal to pay and delay in paying workers' compensation benefits. The district court dismissed for lack of subject matter jurisdiction. We affirm.

## FACTS

The essential facts are not disputed. Greg R. Goetz, plaintiffs' husband and father, died in a plane crash in May 1979 while working within the course and scope

of his employment. His employer filed a report with Aetna, its workers' compensation insurer, which then requested further documentation from Goetz and her children. After receiving the requested documents, Aetna still refused to pay the benefits. Aetna stated it would honor the claim only if the Goetzes agreed to discount the total by fifteen percent. Aetna sought the discount as reimbursement for the cost of retaining subrogation counsel to intervene in the Goetzes' action against American Airlines and McDonnell Douglas for negligently having caused the death of the insured. The Goetzes refused.

When Aetna failed to pay the accrued benefits claimed by plaintiffs, they filed an action with the Industrial Accident Commission. The Workers' Compensation Appeals Board held a hearing on their claim in April 1981. The Board issued an award providing that the plaintiffs were to receive workers' compensation benefits to be adjusted by and between the parties or upon further petition. Aetna thereafter paid plaintiffs $13,208.00, constituting full benefits for the 102 weeks from the date of death through May 8, 1981, less attorney's fees as provided by the award. Aetna made a subsequent payment of $308.00, constituting benefits for the period May 8, 1981, through May 22, 1981. Thereafter Aetna failed, prior to the filing of this action, to make the payments ordered by the Appeals Board.

In September 1981 the Goetzes filed a complaint in the district court alleging that Aetna's conduct in delaying and refusing to pay workers' compensation benefits due them violated Section 790.03(h) of the California Insurance Code. In October 1982 the district court granted Aetna's motion to dismiss on the ground that the court lacked jurisdiction over the subject matter of the action. It ruled that California law vested exclusive jurisdiction of the dispute in the Appeals Board.

## ISSUES

The Goetzes contend, first, that the California workers' compensation scheme violates the equal protection clause of the fourteenth amendment; second, that the facts alleged here fall within a judicially created exception to the statutory exclusivity scheme; and third, that the dual capacity doctrine should be applied to this case in order to allow the Goetzes to prosecute their action in the district court.

## STANDARD OF REVIEW

Review of the federal constitutional issue is de novo. As to the second and third issues, however, we do not disturb a district court's rulings on the law of the state in which it sits unless they are "clearly wrong." *Airlift International, Inc. v. McDonnell Douglas Corporation*, 685 F.2d 267, 269 (9th Cir.1982).

## ANALYSIS

*Equal Protection*

The California workers' compensation law establishes an exclusive system of compensation in all but certain designated employments for injuries which result in disability or death to employees and which arise out of and in the course of their employment. Cal. Labor Code § 3200 *et seq.* The right to compensation is incident to the status of employment and arises regardless of fault. Employees and their dependents give up their common law right to sue the employer in exchange for the right to workers' compensation benefits.

Section 3700 requires employers to acquire workers' compensation insurance or a certificate of self-insurance. Section 3850 deems a workers' compensation insurer the alter ego of the employer. Thus, the exclusive remedy provision normally bars suit by an employee against his or her employer's insurer as a third party. *Unruh v. Truck Insurance Exchange*, 7 Cal.3d 616, 623–29, 498 P.2d 1063, 102 Cal.Rptr. 815 (1972). However, this rule is subject to a judicially created exception when the insurer becomes a "person other than the employer" within the meaning of section 3852 through its independent commission of an intentional

tort. *Id.* at 629–32, 498 P.2d 1063, 102 Cal.Rptr. 815.

In addition, section 5814 authorizes the award of a ten-percent penalty when payment of compensation has been unreasonably delayed or refused.

■ The constitutionality of the substitution of an exclusive remedy in workers' compensation benefits for the common-law right to sue an employer—the foundation of virtually all workers' compensation schemes—has long been settled. *See, e.g., Lower Vein Coal Company v. Industrial Board,* 255 U.S. 144, 41 S.Ct. 252, 65 L.Ed. 555 (1921); *New York Central Railroad v. White,* 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917); *Nelson v. Metalclad Insulation Corp.,* 44 Cal.App.3d 474, 118 Cal.Rptr. 725 (1975). Moreover, as a general rule, a legislature may abolish common law rights without implicating individual constitutional guarantees when acting in pursuit of legitimate state ends. *Duke Power Company v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638 n. 32, 57 L.Ed.2d 595 (1978); *Morris v. Hotel Riviera, Inc.,* 704 F.2d 1113, 1114 (9th Cir. 1983). To satisfy the equal protection clause, classifications embedded in economic legislation need only "bear some rational relationship to a legitimate state end." *McDonald v. Board of Election Commissioners,* 394 U.S. 802, 808–09, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969); *see New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (per curiam); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The California statute at issue meets that threshold.

■ The Goetzes argue, however, that in light of the high interest rates which have prevailed for the last several years, the exclusivity provision now fails this constitutional standard because the ten-percent penalty which section 5814 authorizes the Board to add to an award when an insurer has unreasonably delayed or refused payment is inadequate to fulfill its purpose to compel employers promptly and fairly to deal with claims. Thus, they contend, the class of insurance beneficiaries created by the workers' compensation statute is effectively denied the protection of the remedy created by the Unfair Practices Act, Cal. Ins.Code § 790 *et seq.,* which the California Supreme Court has held to subject insurers to a civil action for damages for enumerated unfair practices. *See Royal Globe Insurance Company v. Superior Court,* 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979). We recognize the problem but it requires a legislative solution.

■ The Goetzes' equal protection argument challenges not classifications apparent from the face of a statute but categories which result from the differing reaches of the workers' compensation and unfair practices laws. While the challenge is unusual, we do not reject it for this reason. A statute does not escape equal protection scrutiny simply because it does not expressly effect the objectionable variation. *See Logan v. Zimmerman Brush Company,* 455 U.S. 422, 438–39, 102 S.Ct. 1148, 1159, 71 L.Ed.2d 265 (1982) (separate opinion of Blackmun, J.); *Id.* at 443–44, 102 S.Ct. 1161–62 (Powell, J., concurring in the judgment). The California workers' compensation law does not arbitrarily deprive claimants of their rights, however. The remedy provided by section 5814 of the Labor Code may not be as effective as that provided by section 790.03 of the Insurance Code, but this is merely an aspect of the exclusivity trade-off underlying the workers' compensation statute. The respective legislative classifications reasonably relate to the legitimate state ends underlying the workers' compensation and unfair practices statutes. Since they "advance[ ] legitimate legislative goals in a rational fashion," *Schweiker v. Wilson,* 450 U.S. 221, 234, 101 S.Ct. 1074, 1082, 67 L.Ed.2d 186 (1981), they do not offend equal protection.

*The* Unruh *Exception to Statutory Exclusivity*

■ In *Unruh,* the California Supreme Court recognized an exception to the exclusive jurisdiction established by statute where an employer's insurance carrier intentionally engages in outrageous and ex-

**565**

treme conduct which cannot be justified by the needs of normal investigation or defense of claims. 7 Cal.3d at 629–31, 498 P.2d 1063, 102 Cal.Rptr. 815. Under such circumstances, the insurer acts as a "person other than the employer" and thereby loses the immunity otherwise conferred upon it as the employer's alter ego. Thus, it is liable to an aggrieved employee for its intentional torts and those of its agents.

The Goetzes contend that the facts they allege bring this suit within the *Unruh* exception. Therefore, they reason, they may avail themselves of the civil damages remedy under section 790.03(h) of the Insurance Code recognized in *Royal Globe.*

Plaintiff in *Unruh* alleged that the insurer's investigator had made romantic overtures to her for the sole purpose of arranging dates during which his colleague could surreptitiously film the plaintiff performing acts beyond her normal physical capabilities. 7 Cal.3d at 620–21, 498 P.2d 1063, 102 Cal.Rptr. 815. Trial courts have consistently refused to entertain suits under section 790.03(h) alleging less extreme conduct, such as wrongful refusal to pay claims. *See Droz v. Pacific National Insurance Company,* 138 Cal.App.3d 181, 188 Cal.Rptr. 10 (1982) (refusal to pay Board award); *Depew v. Hartford Accident & Indemnity Company,* 135 Cal.App.3d 574, 185 Cal.Rptr. 472 (1982) (partial refusal to pay followed by cessation of payments); *Fremont Indemnity Company v. Superior Court,* 133 Cal. App.3d 879, 184 Cal.Rptr. 184 (1982) (delay and arbitrary reduction); *Ricard v. Pacific Indemnity Company,* 132 Cal.App.3d 886, 183 Cal.Rptr. 502, *modified,* 134 Cal.App.3d 787d (1982) (refusal to pay); *Everfield v. State Compensation Insurance Fund,* 115 Cal.App.3d 15, 171 Cal.Rptr. 164 (1981) (delay and arbitrary reduction).

The Goetzes attempt to distinguish these cases on the ground that in each the carrier challenged the validity of the claim. Here, by contrast, Aetna does not dispute its duty to pay. The Goetzes allege that it has instead wrongly refused and delayed payment unless they agreed to bear the financial burden of employing an attorney to enforce Aetna's subrogation rights. In effect, they argue that here there is no plausible claim of right.

The suggested distinction fails. In *Everfield,* for example, an injured employee received workers' disability benefits from his employer through its insurer. Subsequently, the employee brought an action for damages against the insurer, alleging that it had consistently delayed in making payments, had arbitrarily reduced the amount paid, and had intentionally disregarded a subpoena duces tecum. The employee alleged also, as the Goetzes do here, that the acts were done intentionally, deceitfully, fraudulently, and in bad faith with the intention to injure him. 115 Cal.App.3d at 17–18, 171 Cal.Rptr. 164.

The *Everfield* court affirmed the trial court's order of dismissal. It found that the complaint alleged merely "nonperformance of a statutory duty to provide . . . disability benefits under the Labor Code" but did not contain allegations of specific acts "so extreme or abnormal as to fit in the class of misconduct considered in *Unruh.*" 115 Cal. App.3d at 20, 19, 171 Cal.Rptr. 164. The complaint was insufficient because it did not "contain factual allegations identifying the particular acts or circumstances which distinguish the tort of outrageous conduct from an ordinary nonperformance of a statutory duty." *Id.* 115 Cal.App.3d at 20, 171 Cal.Rptr. 164. The court therefore refused to treat the insurer as a "person other than the employer" so as to remove the immunity from civil suit.

Here too the allegations do not rise to a level which would justify invoking the *Unruh* exception to statutory exclusivity. The Goetzes contend that Aetna harassed them and demanded a discount before paying benefits clearly owed. We find no justification for such objectionable practices but recognize that they involve conduct which arises squarely within Aetna's function as insurer. The Goetzes allege "no relationship . . . between plaintiff and defendant other than that of claimant and insurer." *Ricard,* 183 Cal.Rptr. at 506. If plaintiffs could avoid the jurisdictional limitation

merely by alleging that the insurer had improperly refused to pay, the *Unruh* exception would soon subsume the statutory mandate. The district court did not "clearly err" in its interpretation of California law.

*Dual Capacity*

■ In *Bell v. Industrial Vangas, Inc.,* 30 Cal.3d 268, 179 Cal.Rptr. 30, 637 P.2d 266 (1981), the California Supreme Court held that the workers' compensation exclusivity provision did not bar suit against an employer by an employee who alleged that he was injured in a fire while delivering flammable gas to a customer's premises in a tank truck manufactured by the employer. The court found that the duty the defendant owed to users of equipment it manufactured, designed, or sold was independent of the obligations it owed its employees. *Id.* at 279, 179 Cal.Rptr. 30, 637 P.2d 266. It reasoned that since the employer's conduct had injured the employee *qua* consumer, he should be permitted to sue in that capacity. *Id.* at 282–83, 179 Cal.Rptr. 30, 637 P.2d 266.

The Goetzes urge us to extend *Bell's* reasoning to the facts here. Aetna responds that the dual capacity issue is not properly before us because the Goetzes failed to raise it in the district court. Alternatively, it contends that the dual capacity doctrine is inapplicable in the workers' compensation context.

Though issues neglected at the trial level normally may not be raised on appeal, we would treat the dual capacity argument here because it involves jurisdiction. *See In re U.S. Financial, Inc.,* 594 F.2d 1275, 1282 (9th Cir.1979). But the parties' dispute over the application of the dual capacity doctrine does no more than recast the *Unruh* issue just decided. In *Unruh* the California Supreme Court explicitly employed the dual capacity doctrine to resolve a res judicata issue. *See* 7 Cal.3d at 638, 498 P.2d 1063, 102 Cal.Rptr. 815. In *Bell* and elsewhere, that court has discussed the central *Unruh* holding as an application of the doctrine. *See* 30 Cal.3d at 275, 179 Cal.Rptr. 30, 637 P.2d 266; *Johns-Manville Products Corporation v. Superior Court,* 27 Cal.3d 465, 476 n. 10, 165 Cal.Rptr. 858, 612 P.2d 948 (1980); *see also Royster v. Montanez,* 134 Cal.App.3d 362, 370, 184 Cal.Rptr. 560 (1982); *Ricard,* 183 Cal.Rptr. at 506–07. The *Unruh* exception is a specific application of the dual capacity doctrine, the terminology of which adds nothing to the present discussion. We reject the Goetzes' dual capacity argument for the same reason we rejected their argument founded on *Unruh.*

AFFIRMED.