188 F.3d 687 (6th Cir. 1999)
 Joyce R. Lawrence and Caroline Wilson, Plaintiffs-Appellants,
v.
Chancery Court of Tennessee; Robert E. Corlew, III, Chancellor; Carol McCoy, Chancellor; John A.W. Bratcher, Clerk and Master; Claudia A. Bonnyman, Clerk and Master;
Chancery Court of the Sixteenth Judicial District; and Chancery Court of the Twentieth Judicial District, Defendants-Appellees.
 No. 98-6019
 UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
 Submitted: August 4, 1999
Decided and Filed: August 30, 1999
 
 Appeal from the United States District Court for the Middle District of Tennessee at Nashville, No. 98-00130--Thomas A. Higgins, District Judge.
 Richard J. Braun, RICHARD J. BRAUN & ASSOCIATES, Nashville, Tennessee, for Appellants.
 Heather C. Ross, OFFICE OF THE ATTORNEY GENERAL, CIVIL RIGHTS & CLAIMS DIVISION, Nashville, Tennessee, for Defendants-Appellees
 David Randall Mantooth, LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC, Nashville, Tennessee, for Appellees.
 Paul D. Krivacka, METROPOLITAN LEGAL DEPARTMENT, Nashville, Tennessee, for Defendant-Appellee.
 Before: SILER and GILMAN, Circuit Judges; GRAHAM, District Judge.*
 OPINION
 RONALD LEE GILMAN, Circuit Judge.
 
 
 1
 At issue in this case is whether 28 U.S.C. 1446(d), which instructs state courts to "proceed no further" once a case is removed to federal court, nonetheless permits a state to subsequently bill plaintiffs for accrued court costs pursuant tocost bonds they signed when their lawsuits were originally filed in the state court. The plaintiffs, against whom the state of Tennessee assessed and billed court costs when their civil lawsuits were removed to federal court, allege that Tennessee's action in billing them for costs violates the Due Process Clause of the Fourteenth Amendment. They further allege that because this practice treats them differently from plaintiffs whose cases are not removed, it violates their rights under the Equal Protection Clause of the Fourteenth Amendment.
 
 
 2
 The district court granted the defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. We AFFIRM, although on different grounds than those set forth by the district court.
 
 I. BACKGROUND
 
 3
 Joyce R. Lawrence filed suit against her former employer in the Chancery Court of Tennessee for the Sixteenth Judicial District on July 23, 1996. She signed a cost bond in lieu of paying a full deposit for court costs at the time of filing. The defendant removed the case to the United States District Court for the Middle District of Tennessee based upon federal question jurisdiction. On August 20, 1997, Robert Corlew, a chancellor for the Sixteenth Judicial District, issued an order dismissing the case at the plaintiff's cost on the basis that the lawsuit had been removed to federal court. After the chancellor denied Lawrence's state-court motion to amend or rescind that order, Lawrence filed a motion in federal court to reopen the federal case. The district court denied her motion, but issued an order stating that the chancery court was without authority to issue the order for costs. Despite the district court's order, John Bratcher, the clerk of the chancery court, subsequently sent Lawrence's counsel a bill for $91.50 in court costs.
 
 
 4
 Caroline Wilson filed a complaint against her former employer in the Chancery Court of Tennessee for the Twentieth Judicial District on September 5, 1997. She also signed a bond for costs. On October 1 of that year, the defendant removed the case to the United States District Court for the Middle District of Tennessee based upon federal question jurisdiction. On October 6, 1997, Carol McCoy, a chancellor for the Twentieth Judicial District, issued an order dismissing Wilson's case because it had been removed to federal court, and assessed costs against Wilson. Wilson filed a motion in the chancery court to vacate the order of dismissal and the assessment of costs, and tendered a proposed order. The proposed order was never signed. On January 27, 1998, counsel for Wilson received a bill from Claudia Bonnyman, clerk of the chancery court, for $68.50 in court costs.
 
 
 5
 On February 12, 1998, Lawrence and Wilson filed a complaint in the United States District Court for the Middle District of Tennessee pursuant to 42 U.S.C. 1983. Section 1983 prohibits a state from depriving any person of a protected constitutional right under color of state law. An amended complaint was filed on March 17, 1998. The amended complaint names Corlew, McCoy, Bratcher, Bonnyman, and both state judicial districts as defendants. It reads, in pertinent part, as follows:
 
 
 6
 20. Defendants have a policy and practice of assessing and collecting costs from plaintiffs in actions that have been previously removed to federal court.
 
 
 7
 21. Defendants' assessment of costs against the plaintiffs and Defendants' attempts to collect such costs constitute violations of 28 U.S.C. 1446.
 
 
 8
 22. Defendants' assessment of costs against plaintiffs constitutes a violation of plaintiffs' right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution because in assessing such costs in removed cases, defendants treat prevailingplaintiffs in actions that were removed from state court differently than prevailing plaintiffs whose actions were not removed from state court.
 
 
 9
 24. Defendants' assessment of costs against plaintiffs denied plaintiffs their right to due process because defendant Chancellors were clearly without jurisdiction and authority to assess such costs against plaintiffs.
 
 
 10
 The defendants filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which the district court granted in an order entered on June 24, 1998. The district court held that (1) Lawrence and Wilson had failed to state a claim under 28 U.S.C. 1446 because that statute does not authorize a private right of action, (2) they had failed to state a claim under the Due Process Clause because Tennessee's post-deprivation remedies are adequate to address their grievances, and (3) they had failed to state a claim under the Equal Protection Clause because there was no discriminatory classification contained within Tennessee's court cost statute. Lawrence and Wilson timely filed their notice of appeal. They do not appeal the order of dismissal insofar as it relates to claims of a private right of action based on 28 U.S.C. 1446.
 
 II. ANALYSIS
 A. Right result -- wrong reasons
 
 11
 This is a classic case of a district court's reaching the right result for the wrong reasons. The essence of the district court's reasoning is that (a) 28 U.S.C. 1446(d) bars the chancery court from ordering plaintiffs in removed cases to pay accrued court costs, (b) there was no need to consider the state's pre-deprivation remedies because the chancery court's actions were not authorized under federal law, and (c) the equal protection claim fails because the state's court cost statute does not explicitly distinguish between plaintiffs whose cases are removed and those that are not. We disagree with all three rulings, but nonetheless affirm the district court's dismissal of Lawrence's and Wilson's claims for the reasons set forth below.
 
 
 12
 B. The district court did not err when it dismissed Lawrence's and Wilson's due process claim
 
 1. Standard of review
 
 13
 When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff. See Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 55-56 (1957). We review the district court's decision to grant a motion to dismiss de novo. See Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997).
 
 
 14
 Upon such review, we may affirm the district court's decision on any ground supported by the record, even if it is different from the grounds relied on by the district court. See Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 328 (6th Cir. 1999) (holding that the plaintiffs' RICO suit could be dismissed because they had failed to allege that the defendants had acquired control of an enterprise through a pattern of racketeering activity, even though the district court had failed to reach that element when it dismissed the case on other grounds).
 
 
 15
 2. Tennessee provides pre-deprivation process relating to the collection of court costs
 
 
 16
 Lawrence and Wilson allege that they have received bills for the costs assessedagainst them, but they apparently took no action to challenge the billings under applicable Tennessee law. The procedure for contesting such bills is set out as follows:
 
 
 17
 If the taxation of costs is excessive, by charging the costs of witnesses who were not examined, or by charging costs to an improper party, or taxing costs contrary to law, or the taxation is otherwise erroneous, the party aggrieved may move the court for a retaxation, setting forth the particulars in which the clerk has erred.
 
 
 18
 Tenn. Code Ann. ("T.C.A.") 20-12-108 (emphasis added).
 
 
 19
 Even though persons who have been deprived of property under color of state law need not exhaust state administrative remedies before bringing a 1983 claim, see Patsy v. Board of Regents of the State of Florida, 457 U.S. 496, 502 (1982), the presence of Tennessee's pre-deprivation remedy calls into question whether Lawrence and Wilson have suffered a deprivation at all. The record before us is inadequate to determine whether plaintiffs have actually been forced to pay the court costs, or whether they have simply been billed. We need not resolve this uncertainty, however, because we conclude that the plaintiffs failed to state a claim that their due process rights were violated for the reasons set forth in Part II.B.3. below.
 
 
 20
 3. Assessing and collecting court costs does not constitute "proceeding further" under 28 U.S.C. 1446(d)
 
 
 21
 The federal removal statute, 28 U.S.C. 1446, provides in pertinent part that once a case is removed, "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. 1446(d). Interpreting this statute broadly, the district court agreed with the plaintiffs that the chancery court was without authority to assess and collect costs in Lawrence's and Wilson's employment lawsuits. In reaching this conclusion, the district court relied upon Moore's Federal Practice, which states that "[a]ny state court action after the filing of the removal notice is void . . . . Further, the state court has no authority to act after a federal court dismisses rather than remands a case." 107.31(2) (3d Ed. 1997).
 
 
 22
 Defendant Bonnyman, on the other hand, argues that 1446 does not preclude state courts from acting in a ministerial capacity once a case is removed, and that the assessing of court costs already accrued does not constitute "proceeding further." In support of her argument, she cites Master Equipment, Inc. v. Home Insurance Co., 342 F. Supp. 549 (E.D. Pa. 1972), in which the court held that the state court could act to correct its own records to remove a default judgment that the federal court would otherwise have ordered stricken. See id. at 552. Although Master Equipment is not precisely on point, it stands for the proposition that 1446(d)'s prohibition to "proceed no further" does not extend to ministerial acts that do not affect the merits of the dispute between the parties. Otherwise, the state court would be forever prohibited from taking any action at all regarding the now-removed case (assuming no remand). This would include such actions as the routine destruction of old files, allowing parties to remove documents for proper legal purposes, or any other similar action that required a court order.
 
 
 23
 Our search through the case law interpreting 1446(d), and through the legislative history of that provision, has provided us with little to no guidance concerning the extent of a state court's power to perform ministerial functions after removal. Despite the broad language in Moore's Federal Practice quoted above, none of the cases cited in its 107.31(2) is comparable to the facts in the present case or supports the sweeping proposition that any state court action is void after the removal notice is filed.
 
 
 24
 Even though there is a dearth of authority interpreting what "proceed no further" means, we see no reason to believe thatCongress intended for the state courts in removed cases to be forever paralyzed from taking ministerial steps that do not affect the adjudication of the parties' dispute. Because the collection of accrued court costs from a state-court plaintiff who has signed a cost bond is not inconsistent with 1446(d)'s purpose and appears to be the only way that a state can recoup the costs incurred by such a plaintiff whose case is removed, there is a valid basis for the state's practice.
 
 
 25
 The case of Pershern v. Fiatallis North America, Inc., 834 F.2d 136 (8th Cir. 1987), provides support for our conclusion. In Pershern, the Eighth Circuit held that 28 U.S.C. 1920, which authorizes district courts to award costs, does not permit them to take into account state-court filing fees. See id. at 140. We agree with the Eight Circuit's reading of 1920. Without the possibility of an award of such costs coming from the federal court action, the chancery court would have no means of recouping its costs in removed cases other than by billing a party directly. Because the assessment and collection of state court costs have been found to lie outside of the federal courts' power, the state courts' doing so is not an impermissible infringement on federal-court jurisdiction under 28 U.S.C. 1446(d).
 
 4. The basis for the due process claim
 
 26
 The plaintiffs' due process argument hinged upon their assertion that 28 U.S.C. 1446(d) divested the chancery court of authority to assess the accrued court costs against them. From this faulty premise, they argued that the taking of their property by a tribunal with no authority to order such a taking violated their right to due process under the Fourteenth Amendment. Having concluded that 1446(d) does not in fact prohibit the chancery court from assessing accrued court costs to the plaintiffs, we affirm the district court's decision to dismiss their due process claim.
 
 
 27
 Although we agree with the district court's ultimate ruling on this issue, we disagree with its reasoning. The district court adopted the plaintiffs' argument that 1446(d) prohibited the chancery court from assessing court costs after the removal of their cases to federal court, but then held that their due process rights were not violated because (1) the chancery court's action was "unauthorized" under federal law and (2) adequate post-deprivation remedies were available under state law. This concept that an unauthorized action by a state actor avoids the need for an adequate pre-deprivation remedy arises from the case of Parratt v. Taylor, 451 U.S. 527 (1981), which held that a prison inmate whose mail was lost did not suffer a violation of due process because his loss did not result from an authorized state practice and the state had adequate post-deprivation tort remedies available. See id. at 543.
 
 
 28
 The error in the district court's analysis is twofold. First, for the reasons stated in Part II.A.3. above, 1446(d) does not prohibit the assessment of accrued court costs by the chancery court. Second, the inquiry into whether a state actor's conduct is authorized or unauthorized must focus upon state law and policy, and not upon federal law. As this court noted in Mackey v. Dyke, 29 F.3d 1086, 1093 (6th Cir. 1994), "[t]he controlling inquiry is whether the state was in a position to provide for predeprivation process." In any event, we find no need to follow the district court's tortuous path to the right result in light of our straightforward approach that 1446(d) does not prohibit the chancery court's ministerial action in the present case.
 
 
 29
 C. The district court did not err when it dismissed Lawrence's and Wilson's equal protection claim
 
 
 30
 1. A statutory classification is not a prerequisite to an equal protection claim
 
 
 31
 Finding that nothing in the Tennessee Code distinguishes between plaintiffswhose cases are removed and those whose cases remain in state court, the district court concluded that Lawrence and Wilson had not alleged facts sufficient to support their equal protection claim. The district court relied on this court's unpublished opinion in Jackson v. Roeman Real Estate Co., 1986 WL 16655 (6th Cir. March 5, 1986). The Jackson case, however, does not stand for the proposition for which it is cited by the district court. In Jackson, the plaintiff had contracted, through the Toledo Fair Housing Center, to pay $45 per hour in attorney's fees to her counsel. When the plaintiff prevailed, the court ordered the defendants to pay her legal fees at the higher prevailing rate for attorney's fees under 48 U.S.C. 1988. The court rejected the defendants' argument that requiring them to pay the prevailing rate for attorney's fees when the Toledo Fair Housing Center could contract for them at a lower rate violated the Equal Protection Clause. See id. at 3. After noting that the statute providing for attorney's fees allowed plaintiffs to recover reasonable fees from both government and non-government defendants alike, the court held that the plaintiff's legal-services agreement for a lower amount was a matter of private contract that was irrelevant to the issue before it. See id. Nowhere does the case indicate that an explicit classification within a statute is a required basis for an equal protection claim. Instead, the case stands for the unremarkable proposition that a statute treating all defendants the same cannot pose an equal protection problem.
 
 
 32
 In the present case, however, Lawrence and Wilson have alleged the existence of an official practice that treats them differently from plaintiffs whose cases are not removed. Under appropriate circumstances, the allegation of a discriminatory official practice will suffice to state a claim under the Equal Protection Clause. In Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), for example, a discharged employee's claim before the state Fair Employment Practices Commission was terminated when the state failed to hold a hearing within the 120-day period prescribed by a state statute. The employee argued that the combination of the statute and the state's action violated the Equal Protection Clause. Although the majority decided the case on other grounds, Justice Blackmun's concurrence, which was joined by three other justices, responded to the argument as follows:
 
 
 33
 On its face, Logan's equal protection claim is an unconventional one. The Act's 858(b) establishes no explicit classifications and does not expressly distinguish between claimants, and the company therefore argues that Logan has no more been deprived of equal protection than anyone would be who is injured by a random act of governmental misconduct. As the Illinois Supreme Court interpreted the statute, however, 858(b) unambiguously divides claims--and thus, necessarily, claimants--into two discrete groups that are accorded radically disparate treatment. Claims processed within 120 days are given full consideration on the merits, and complainants bringing such charges are awarded the opportunity for full administrative and judicial review. In contrast, otherwise identical claims that do not receive a hearing within the statutory period are unceremoniously, and finally, terminated. Because the Illinois court recognized, in so many words, that the FEPA establishes two categories of claims, one may proceed to determine whether the classification drawn by the statute is consistent with the Fourteenth Amendment.
 
 
 34
 455 U.S. at 438-39.
 
 
 35
 Another pertinent case is Goetz v. Aetna Casualty and Surety Co., 710 F.2d 561 (9th Cir. 1983). In Goetz, the Ninth Circuit applied rational-basis review to a plaintiff's equal protection claim based upon the allegedly unfair effects of an exclusivity provision in the California workers' compensationscheme upon claimants whose insurers have unreasonably refused to deal with their claims. Although it ultimately concluded that California's practice had a rational basis, the court stated:
 
 
 36
 The Goetzes' equal protection argument challenges not classifications apparent from the face of a statute but categories which result from the differing reaches of the workers' compensation and unfair practices laws. While the challenge is unusual, we do not reject it for this reason. A statute does not escape equal protection scrutiny simply because it does not expressly effect the objectionable variation.
 
 
 37
 Id. at 564 (citing Logan).
 
 
 38
 Like the plaintiffs in Logan and Goetz, Lawrence and Wilson claim that Tennessee's practice of assessing costs under a statute that contains no explicit classifications (T.C.A. 20-12-101) penalizes a definable group of litigants due to circumstances beyond their control. The district court's response was that because the statute is neutral on its face, no equal protection claim can be made. In light of the Logan and Goetz decisions, we conclude that this rationale is flawed.
 
 
 39
 2. Tennessee has a rational basis for assessing costs
 
 
 40
 Instead, we must determine whether a rational basis justifies the state's official policy as alleged in this case. See Berger v. City of Mayfield Heights, 154 F.3d 621, 625-26 (6th Cir. 1998) (holding that a city ordinance requiring lots below a certain size to be clear cut to below eight inches, but exempting larger lots, violated the Equal Protection Clause because it had no rational basis).
 
 
 41
 As noted in Part II.B.3. above, the state of Tennessee has no effective means of recouping the court costs incurred in removed cases other than by assessing and billing those costs directly. Furthermore, the very fact that the chancery court loses control over a removed case establishes that the plaintiffs in such cases are not similarly situated to those plaintiffs whose cases are not removed. In contrast to cases that remain in the state system, the chancery court has no means of exacting such costs from losing defendants at the close of the litigation. We therefore conclude that Tennessee's alleged policy of assessing court costs against parties such as Lawrence and Wilson is rationally based. For these reasons, there is a valid basis on which to affirm the district court's decision to dismiss Lawrence's and Wilson's equal protection claim.
 
 
 42
 Moreover, we note that plaintiffs who file suit in a state court alleging federal causes of action know going in that their case can be removed to federal court. They should therefore not be surprised if this in fact occurs. Plaintiffs concerned about incurring state court costs in such a situation can simply file suit in federal court from the outset.
 
 III. CONCLUSION
 
 43
 For all of the reasons stated above, we AFFIRM the decision of the district court.
 
 
 
 Notes:
 
 
 *
 The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.