**James ELSMAN and Janice Elsman, Plaintiffs–Appellants,**

v.

**STANDARD FEDERAL BANK (Michigan); Standard Federal Bank (Chicago); Standard Federal Bancorporation; Dykema Gossett; Craig L. John; Andrew J. Lusk; and Katherine M. White, Defendants–Appellees.**

No. 00–2293, 01–1544.

United States Court of Appeals, Sixth Circuit.

Sept. 5, 2002.

Before RYAN, BOGGS, and COLE, Circuit Judges.

RYAN, Circuit Judge.

The plaintiffs, James Elsman and Janice Elsman, appeal the district court's summary judgment for the defendants. In their complaint, the Elsmans alleged a va-

riety of federal statutory and constitutional violations stemming from the defendant Standard Federal Bank's foreclosure on mortgaged real property the Elsmans owned. In addition, James Elsman appeals the district court's imposition of sanctions against him in the amount of $16,690.56, granted pursuant to Rule 11 of the Federal Rules of Civil Procedure.

We affirm the district court's order granting the defendants' motion to dismiss and/or for summary judgment. However, because the district court failed to identify the basis for the Rule 11 sanctions and failed to conduct any inquiry into the reasonableness of the award amount, we reverse the judgment awarding sanctions and remand the Rule 11 inquiry to the district court for further proceedings.

## I. BACKGROUND

While the suit names both James Elsman and Janice Elsman as plaintiffs, the relevant facts concern only James Elsman. James Elsman, a practicing attorney, has served as his own counsel throughout the course of this litigation. In this opinion we address two separate appeals, which we have consolidated for hearing and decision. In appeal No. 00–2293, Elsman challenges the district court's grant of the defendants' motion to dismiss and/or for summary judgment, and in appeal No. 01–1544, he addresses the Rule 11 sanctions imposed against him.

Both appeals derive from Standard Federal's foreclosure on mortgaged property owned by Elsman and subsequent state litigation. The facts of the underlying dispute can be divided into (1) the bank's foreclosure on Elsman's real estate and (2) the subsequent seizure of his personal property. We discuss each in turn.

### A. Real Property Foreclosure

Over a period of years, Standard Federal provided Elsman a series of loans, including a $320,000 loan for which Elsman gave the bank a promissory note. To secure payment of the note, Elsman granted the bank a mortgage interest in property located in Birmingham, Michigan. When Elsman failed to make timely payments on the loans, the bank foreclosed on the Birmingham property by advertisement and exercised the power of sale contained in the mortgage agreement by holding a sheriff's sale in July 1995. From that action, the bank obtained a sheriff's deed on the property for $277,500. Immediately prior to the expiration of a six-month redemption period, Elsman filed suit in Oakland County Circuit Court claiming that the Michigan foreclosure statutes violated due process. The parties reached a settlement and negotiated a workout schedule, and the case was dismissed with prejudice.

While Elsman largely complied with the agreed workout requirements, which stipulated that he make $8,000 monthly payments, after April 1, 1997, he fell out of compliance with the agreement by failing to obtain the release of a second mortgage. The bank then filed a complaint for possession in Michigan district court. The state district court granted Standard Federal a judgment of possession on July 31, 1997.

After issuance of the judgment of possession, Elsman filed a motion for reconsideration, which was denied. He then filed numerous appeals in the Michigan courts. During the pendency of these appeals, no writ of restitution issued and the bank was unable to enforce its judgment of possession. Appeals to the Oakland County Circuit Court, the Michigan Court of Appeals, and the Michigan Supreme Court were unsuccessful. *See Standard Fed. Bank v. Elsman*, 461 Mich. 898, 607

N.W.2d 726 (Mich.2000) (Table); *Standard Fed. Bank v. Elsman,* 461 Mich. 898, 603 N.W.2d 644 (Mich.1999) (Table).

His state appeals exhausted, Elsman filed suit in federal district court on May 2, 2000, contending that he was being denied his due process right to sell the Birmingham property to a party offering more than the bank's contracted buyer. After filing his federal complaint, Elsman also filed a notice of *lis pendens* on the Birmingham property with the Oakland County Register of Deeds. He returned to Michigan state court on May 3, 2000, arguing that the filing of his federal suit stayed the writ of restitution set to issue on that day. The state court denied Elsman's motion and issued the writ of restitution. Undeterred, on the same day, Elsman appeared in federal district court seeking a temporary restraining order (TRO). At the hearing, Elsman sought the return of personal property that had been seized by Standard Federal, about which more *infra,* and an order prohibiting further foreclosures. Without issuing an order, the district court did not grant the requested TRO. On June 20, 2000, the writ of restitution on the Birmingham property was finally executed.

### B. Personal Property

The second set of facts germane to these appeals concerns Elsman's personal property, but begins with Standard Federal's foreclosure on another piece of real property for which Elsman was the mortgagor. The property's identity is not made clear by the parties, but the foreclosure sale of this second parcel resulted in a deficiency. The Oakland County Circuit Court mediated the dispute and entered a $125,000 judgment in favor of Standard Federal. Elsman made payments on the judgment over two years and claims that he paid approximately $100,000. Nevertheless, Elsman failed to satisfy the judgment and the bank sought, and obtained, an execution against Elsman's personal property for $44,542. Elsman's motor vehicle, a van, and some personal property within the van were seized as a result of that action. Elsman alleges that the executing officer and two Birmingham police officers came "storming into" his locked office building to take possession of the property.

### C. District Court Proceedings

It was with these events as background, that Elsman filed the federal complaint that is the subject of this appeal. Seeking class certification (Count I) and injunctive relief (Count IX), Elsman challenged the bank's actions involving the real property in Counts II and III. He also argued the following, relative to the van seizure: that seizure of the van occurred in violation of due process, equal protection, and the Takings Clause (Count IV); § 1983 claims for violation of unnamed Michigan and United States constitutional provisions (Count V); violation of the Truth in Lending Act (TILA), the Consumer Credit Protection Act, and the Fair Debt Collection Act (Count VI); RICO violations (Count VII); and "lender liability" for breach of fiduciary duty, fraud, and violation of good faith and fair dealing (Count VIII).

The defendants filed a motion to dismiss and/or for summary judgment on August 7, 2000, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56. At a hearing on the motion, the district court first denied Elsman's motion to adjourn the proceedings, noting that the briefing schedule had been set out far in advance. The district court then granted the defendants' motion in cursory fashion. It stated from the bench: "For the reasons that ... the defense has briefed and argued here, this Court is constrained to grant the motion to dismiss." Relying on the *Rook-*

*er/Feldman* doctrine, *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the court noted that it did not have jurisdiction to review the holdings of the Michigan courts and if an appeal were to be taken it should be to the United States Supreme Court. The court also held that the *claims not fully litigated* in the state court were barred by the doctrine of *res judicata.* In a seeming contradiction, however, the district court concluded that all of Elsman's arguments *had been presented and ruled on* in a previous lawsuit involving the same parties. The district court did not identify to which arguments it was referring.

### D. Rule 11 Sanctions

On February 26, 2001, the district court held a hearing on the defendants' motion for Rule 11 sanctions against Elsman. The defendants argued that Elsman filed the federal suit for the sole purpose of avoiding collection of judgments and that the legal and factual contentions in his complaint were without basis. The defendants asked the court to "award fifteen thousand dollars in monetary sanctions and order Mr. Elsman to remove a notice of his lis pendens that he filed" on the Birmingham property. The court questioned the defendants' counsel on the $15,000 figure, and counsel responded that she could submit an itemized bill setting forth the basis for that amount. Elsman spent the majority of the hearing re-arguing the court's motion-to-dismiss judgment, stating that he "never had any day in court to contest that [the defendants] had no right to break in by jimmying my door, bring two police officers, confront my secretary, confront my staff and proceed to seize personal property. I thought it was Nazi-like. I called it in my complaint a jackboot raid."

At the conclusion of the hearing, the district court ruled in the defendants' favor. It simply stated, "Mr. Elsman, it does appear that for all the reasons that the defense here has briefed and argued, the Court must grant their Motion for Rule Eleven Sanctions." The amount of the award was left undetermined, but the court held that it would "award sanctions if they are properly supported under oath by the defense, costs and attorney fees ...." The defendants were ordered to submit an itemized statement detailing their calculation of appropriate sanctions, and Elsman would then have seven days in which to dispute that amount. Elsman was also ordered to remove the notice of *lis pendens* on the Birmingham property. The defendants thereafter submitted an affidavit setting forth their request for attorney fees, to which Elsman responded. The defendants requested a total of $20,973.66 in fees, $4,283.10 of which related to appellate work. The district court then issued a final judgment ordering Elsman to pay the defendants $16,690.56, which represented the defendants' fees and expenses accrued defending the action in the district court.

## II. MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

Elsman's argument concerning the motion to dismiss/summary judgment is predicated on two different assertions. First, he contends that when the foreclosed Birmingham property was offered for sale, that due process, equal protection, and "other equities" required the bank to accept the high bid of $325,000, which Elsman notes he had negotiated with a professional football player. The bank accepted a bid of $200,000 for the building. Elsman admits, however, that he has advanced this argument before Michigan courts and that "[t]he State Courts of Michigan did not

agree with [him], right up to, and including, the Supreme Court of Michigan, where no Michigan Court was willing to rule that Bank must sell to the Elsmans ....." As a second point, he argues that the seizure of his van violated the TILA, the Consumer Credit Protection Act, and the Fair Debt Collection Act, as well as constitutional provisions concerning due process and prohibition of "illegal Entry and Search."

Elsman also offers four additional arguments. He first contends that the court's failure to adjourn the hearing on the defendants' motion to dismiss/summary judgment was improper because three of the four forms of discovery available to him had not been undertaken and there had been no pretrial hearing. Second, he argues that the district court improperly restricted discovery. He states that discovery would have demonstrated that there was no previous litigation concerning the " 'Nazi storm-trooper' back-door-break-in." In his third argument, Elsman contends that *Rooker/Feldman* is so fraught with exceptions, it is not a doctrine. In his fourth claim, Elsman contends that the court should have granted him leave to amend his complaint to delete those counts not related to his personal property arguments.

We review a district court's grant of a motion to dismiss and/or for summary judgment *de novo*. *Patmon v. Michigan Supreme Court,* 224 F.3d 504, 508 (6th Cir.2000). Pursuant to that standard, we find that the district court properly granted summary judgment to the defendants. For ease of discussion, we review Elsman's real property and personal property claims independently.

### A. Real Property Argument

■ The district court properly held that the *Rooker/Feldman* doctrine pre-

vented it from exercising subject matter jurisdiction over Elsman's real property claims. In short, if Elsman wished to further challenge the defendants' refusal to accept his negotiated high bid for the Birmingham property, he should have filed for *certiorari* in the United States Supreme Court. By federal statute, state supreme court judgments are reviewable by the United States Supreme Court, provided that the state body has ruled on the validity of a federal law or the validity of a state law relative to the United States Constitution or federal statutes. 28 U.S.C. § 1257(a); *see Rooker,* 263 U.S. at 416. In *Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206, the Supreme Court examined this statute and held that it provides the only avenue for federal review of a state court judgment. *Id.* at 476. Therefore, as this court has noted, "Review of final determinations in state judicial proceedings can be obtained only in the United States Supreme Court." *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.),* 801 F.2d 186, 189 (6th Cir.1986). While there is an exception to *Rooker/Feldman* when a plaintiff makes a claim facially attacking the constitutionality of a statute, *Patmon,* 224 F.3d at 509, this is not such a case. As Elsman readily admits, he fully argued before Michigan courts that the bank's refusal to accept $325,000 for the Birmingham property violated due process and equal protection guarantees. When that argument was rejected by Michigan courts, his recourse was to the United States Supreme Court. The district court properly declined to exercise subject matter jurisdiction over Elsman's real property claims.

### B. Personal Property Argument

Elsman's personal property claims present a more difficult question. The district court's simple assertion that "[f]or the rea-

sons that ... the defense has briefed and argued here, this Court is constrained to grant the motion to dismiss," further muddles the issue.

■ In his brief to this court, Elsman argues that the seizure of the van and the other personal property violated due process; constituted an "illegal Entry and Search"; violated 42 U.S.C. § 1983; and violated the TILA, the Consumer Credit Protection Act, the Fair Debt Collection Act, RICO, and Michigan common law. Elsman waives whatever equal protection or Takings Clause argument he was advancing in his complaint, because his brief offers no argument on either.

Because we have practically no district court record to review, we must turn to the parties' filings in that court in an attempt to discern the basis for the district court's decision. Upon recourse to the defendants' brief to the district court, it is clear that the defendants rested their motion for dismissal and/or for summary judgment on the *Rooker/Feldman* doctrine, *res judicata*, and the fact that the defendants are not state actors. The defendants also argued that Elsman's federal statutory and state law claims failed on their face. Each of Elsman's arguments can be disposed of by resort to one of these grounds.

■ Elsman's due process and § 1983 arguments are without merit because these defendants are not state actors. "It is undisputed that ... Fourteenth Amendment protections, codified in 42 U.S.C. § 1983, are triggered only in the presence of state action ...." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir.2000); *see* U.S. Const. amend. XIV, § 1; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (Fourteenth Amendment); *Polk County v. Dodson*, 454 U.S. 312, 318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (§ 1983). There is an

exception to this general rule: "[A] private entity can be held to constitutional standards when its actions so approximate state action that they may be fairly attributed to the state." *Lansing,* 202 F.3d at 828. Elsman, however, does not argue that the activities of these private actors can be attributed to the state and we decline to make that argument for him. Even though Elsman named state officials as defendants in his original complaint, they did not file briefs, they made no appearances, and they are not parties to this appeal. Their absence from any part of the litigation requires us to conclude that this is an action against private parties. *See Flagg Bros. v. Brooks,* 436 U.S. 149, 157, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The district court properly dismissed Elsman's due process and § 1983 claims.

■ Elsman also presents an argument in his brief styled as "illegal Entry and Search," which he represents is derived from allegations appearing in Count IV of his complaint. However, nowhere in Count IV can any such claim be found; rather it appears this "illegal Entry and Search" claim is presented for the first time on appeal, and even here the argument is not developed sufficiently to enable us to understand it.

It is a general rule that a federal court of appeals cannot review and therefore does not pass judgment on an argument not considered in the court below. *In re Morris,* 260 F.3d 654, 663 (6th Cir.2001). "[I]n certain circumstances, such as where proper resolution is beyond any doubt or where injustice might otherwise result, an appellate court could properly consider issues not passed on below ...." *Id.* (internal quotation marks omitted). This, plainly, is not such a case.

We turn next to Elsman's remaining statutory and state law claims. At oral argument, counsel for the defendants claimed that the federal statutory and state law allegations set forth by Elsman were barred by *res judicata.* The defendants apparently view these claims as a challenge to the validity of the underlying debt and the propriety of the defendants' collection efforts. The defendants contend that the debt amount has been adjudicated by a Michigan court and that attempts to relitigate the bank's legal rights relative to that debt are precluded.

Reference to the defendants' brief to this court demonstrates that counsel's argument is a new strategy first presented at oral argument before us. The defendants' brief makes clear that their *res judicata* discussion is confined to the "Birmingham Property and the Real Property Action." Nowhere in their appellees' brief do they argue that the doctrine of *res judicata* has any preclusive effect on claims concerning the seizure of Elsman's personal property. Moreover, review of their brief to the district court reveals that at no time did the defendants argue below that *res judicata* barred Elsman's personal property claims. Instead, their brief to the district court makes clear that their argument against Elsman's federal statutory and state law claims is founded on the belief that the TILA, the Consumer Credit Protection Act, the Fair Debt Collection Act, RICO, and state law claims fail because Elsman did not set forth any allegations relating to the essential elements of any of the claims.

Elsman's largely unintelligible complaint and briefs certainly do little to clarify the point. If he is arguing that the debt he owes Standard Federal is somehow indeterminate, that argument is precluded by the Oakland County Circuit Court's judgment holding that Elsman owes in excess of $40,000 to Standard Federal and that the defendants can collect on that debt. If, however, he is arguing that the manner in which the personal property seizure was conducted violated the federal and state laws at issue, that argument was presented for the first time to the district court, which erroneously dismissed those claims based on *res judicata.*

■ Nevertheless, upon review of his federal statutory and state claims, it is clear that Elsman alleges nothing more than bare legal conclusions that the defendants violated selected federal statutes and state law. In reviewing a judgment granting a motion to dismiss, we may properly affirm the district court on any grounds suggested by the record, even those not considered below. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir.1999). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.... [M]ore than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 319 (6th Cir.1999) (internal quotation marks and citations omitted). Here, Elsman's complaint contains only the summary conclusion that the defendants' actions violated the TILA, the Consumer Credit Protection Act, the Fair Debt Collection Act, RICO, and state law. Elsman makes no attempt in his complaint or in his briefs to present any facts concerning the elements required to prove violation of any of the aforementioned federal statutes and state claims. Even though the district court did not employ the correct legal principle in dismissing Elsman's claims, dismissal was appropriate because the

complaint does not adequately plead any actionable claim.

Finally, upon review of the record we are satisfied that neither Elsman's argument that he should have been allowed to amend his complaint, nor his argument that the district court erroneously denied his motion to adjourn, have merit.

## III.  RULE 11 SANCTIONS

Elsman next contends that the district court failed to comply with Federal Rule of Civil Procedure 11(c)(3), which requires that a court issuing Rule 11 sanctions must describe the alleged offender's conduct and explain the basis for its decision.  The defendants counter that the district court complied with Rule 11(c)(3) when it noted on the record that it was imposing sanctions "for all the reasons that the defense here has briefed and argued."  In addition, the court articulated its reasons for imposing sanctions when it noted that Elsman had no legal or good faith basis for arguing for modification of an existing law.

All aspects of the district court's imposition of Rule 11 sanctions are subject to review under an abuse of discretion standard.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997).

We begin our analysis by noting that the Federal Rules of Civil Procedure are to be given their plain meaning, and when their terms are unambiguous, judicial inquiry is at an end.  *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 123, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).  The Rules allow for the award of "all of the reasonable attorneys' fees and other expenses incurred as a direct result of the [Rule 11] violation."  Fed.R.Civ.P. 11(c)(2).  The test for the imposition of Rule 11 sanctions remains whether the individual's conduct was reasonable under the circumstances. *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 507 (6th Cir.1998); *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir.1997).  Although the Federal Rules discourage awards to injured parties, a direct payout is particularly appropriate if the violation involves filings that were intended to harass or cause unnecessary delay, as described in Federal Rule of Civil Procedure 11(b)(1). *Union Planters*, 115 F.3d at 386.

We have held that a district court is required to make specific inquiries when imposing Rule 11 sanctions.  First, "before an award of attorneys' fees may be made under the rule, it must be shown that the fees were incurred because of the filing of an improper pleading. . . . [B]efore granting a motion for fees under Rule 11, a trial court must *analyze* the impact upon the moving party of *discrete acts* of claimed misconduct."  *Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 989 F.2d 213, 218 (6th Cir.1993) [hereinafter *Bodenhamer II* ] (internal quotation marks, citation, and alterations omitted) (emphasis added).  Second, when a party moves for reimbursement of costs and legal fees, the district court should investigate the reasonableness of such costs and fees.  *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th Cir.1992).

Upon completion of the above mentioned inquiries, the court must announce its findings.  "When imposing sanctions, the court *shall describe* the conduct determined to constitute a violation of this rule *and explain* the basis for the sanction imposed."  Fed.R.Civ.P.  11(c)(3)  (emphasis added).  The district court's failure to adequately describe the misconduct found and to explain the basis for imposing the particular sanction selected is an abuse of discretion.  We have held previously that the district

court's failure to "indicate how any particular pleading, motion, or paper relates to any particular expense or attorney fee" merits remand. *Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 873 F.2d 109, 114 (6th Cir.1989) [hereinafter *Bodenhamer I* ]; *see Vild v. Visconsi*, 956 F.2d 560, 571 (6th Cir.1992). When the district court fails "to make the findings necessary to support a blanket award of attorneys' fees[,]" the sanction award must be overturned. *Bodenhamer II*, 989 F.2d at 217. Commentators on the Federal Rules of Civil Procedure have reached a similar conclusion:

> If sanctions are deemed appropriate, the court should indicate fairly precisely what conduct has been found to be improper and under which provision of law the sanctions are being awarded. In addition, and particularly when a substantial amount of money is involved, the district judge should state with some specificity the manner in which the sanction has been computed.

5A Wright and Miller, Federal Practice and Procedure: Civil 2d § 1337, at 132–33 (1990) (footnotes omitted). Several of our sister circuits have held that the district court's failure to state the basis for sanctions justifies remand when that failing limits the appellate court's ability to conduct its review. *See, e.g., Katz v. Household Int'l, Inc.*, 36 F.3d 670, 673 (7th Cir. 1994); *Fed. Deposit Ins. Corp. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir.1994); *Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir.1994).

■ We note that the district court is not always required to provide a full evidentiary hearing prior to imposing Rule 11 sanctions. *Union Planters*, 115 F.3d at 385. Moreover, we also recognize "that the job of trying to break down attorney fees in a way consistent with this rule is an unmitigated headache." *Bodenhamer II*, 989 F.2d at 219. Nonetheless, the plain meaning of Rule 11(c)(3) and our precedent direct us to remand Rule 11 sanctions when the district court fails to identify specifically the conduct in violation of Rule 11, and fails to inquire into the reasonableness of the award amount. Such failure constitutes an abuse of discretion.

Merely noting, as this district court did, that "it does appear that for all the reasons that the defense here has briefed and argued, the Court *must* grant their Motion for Rule Eleven Sanctions" (emphasis added), does not satisfy Rule 11(c)(3)'s directive. The district judge did not *"describe* the conduct determined to constitute a violation of this rule *and* [did not] *explain* the basis for the sanction imposed." Fed.R.Civ.P. 11(c)(3) (emphasis added). It is not sufficient for the district court merely to announce its agreement with the "reasons … briefed and argued" by the party seeking sanctions, and then leave it to this court to comb through the accusing parties' pleadings and briefs filed in the district court and the transcript of any oral argument made there, in order to locate for itself facts that might constitute sufficient grounds for the imposition of Rule 11 sanctions. When imposing Rule 11 sanctions, the district court must itself *identify* the offending filing that is the basis of the sanctions and must state *how* that filing violates Rule 11. Furthermore, the court must issue findings as to the reasonableness of the award calculation. The district court did none of those things in this case. Its failure has prevented us from conducting an informed appellate review and amounts to an abuse of discretion.

Therefore, we hold that the district court failed to comply with the requirements of Rule 11(c)(3) when it imposed Rule 11 sanctions against Elsman merely

by adopting, in whole, "the reasons that the defense here has briefed and argued," rather than making its own findings of fact and conclusions of law, and therefore abused its discretion.

### IV. CONCLUSION

We **AFFIRM** the district court's judgment dismissing the plaintiff's complaint. However, we **REVERSE** the district court's judgment granting Rule 11 sanctions against Elsman, **VACATE** the court's Rule 11 order, and **REMAND** for further proceedings consistent with the requirements of Rule 11 and this opinion.